JOHN LYONS *vs.* THE ORANGE, ALEXANDRIA AND MANASSAS RAILROAD COMPANY.

*Acceptance of an Act of Assembly by a Corporation— Acceptance of a Charter — Conditions precedent— Construction of a Contract.*

Acceptance of an Act of Assembly by a corporation, may be inferred from the exercise of corporate powers, or other unequivocal acts on its part; but this presumption cannot prevail against direct proof.

As a general rule, when a charter is granted, whether it be one of creation or an amendment to a pre-existing corporation, it must either be accepted or rejected as offered, and without condition; and in accepting the privileges conferred, the grantees will be required to perform the conditions imposed.

But this rule, while applicable to subsequent conditions to be performed after the organization of the company, does not apply to conditions precedent, upon the strict performance of which the very existence and exercise of powers on the part of the corporation depend.

Conditions precedent are any thing which, by the express provisions of the statute, is made a condition to be performed on the part of the corporation before, and as a foundation of the exercise of the powers and privileges under the charter.

An assumption to pay the debts of a company admitted to be hopelessly insolvent, ratably according to the value of its assets, is not substantially an agreement to pay its debts in full, "whether bonded or floating, ascertained or to be ascertained."

APPEAL from the Court of Common Pleas.

This was an attachment on warrant, by the appellant against the appellee, a corporation not chartered by the State of Maryland, to recover an indebtedness originally due to him by the Manassas Gap Railroad Company, and for which it was claimed the appellee had become responsible. The attachment was dissolved by bond, and the appellee appeared and pleaded to the short note. Errors in pleading on both sides were waived, and it was agreed that the plaintiff or defendant might, respectively, rely on any matter of claim or defence connected with the liability of the defendant for the claims filed with the attachment papers, to which either would be entitled if specially declared on or pleaded. The appellant proved that the single bills and promissory notes filed with the attachment papers had been, on the day of the date of each of them respectively, and before the passage of the Acts of Assembly hereafter mentioned, duly executed, for and on behalf of the Manassas Gap Railroad Company, and delivered to him for debts then due by said company to him, and that said indebtedness had never been paid. He also proved two Acts of Assembly of Virginia, passed, the one on the 14th of February, and the other on the 29th of April, 1867, (the latter being amendatory of the former,) authorizing the charter, franchises and all the property of the Manassas Gap Railroad Company to be transferred to and vested in the Orange and Alexandria Railroad Company, upon the last mentioned company complying with and performing the terms, stipulations and agreements in said Acts set forth. One of the conditions was, that the Orange and Alexandria Railroad Company should assume the payment of all debts due by the Manassas Gap Railroad Company, whether bonded or floating, and whether then ascertained or thereafter to be ascertained, and that when the transfer of the charter should be determined upon by the respective companies, the Orange and Alexandria Railroad Company might assume and be known by the name of the Orange, Alexandria and Manas-

.sas Railroad Company—the present name of the appellee. He also proved, that at the time of trial, the appellee was, and for a long time had been, in possession of, and exercising acts of ownership over, working and using, the franchises, cars, road and other property formerly belonging to the Manassas Gap Railroad Company, and had adopted and was known by the name only of the Orange, Alexandria and Manassas Railroad Company. He also proved that before the institution of this suit, his counsel called on the appellee for a settlement and payment of the claims now sued for, and that the appellee refused to make any settlement or payment thereof, or of any part of them. The appellee proved the contract, dated the 25th of April, 1867, between the two original companies, reciting that said companies had accepted the provisions of the Act of the 14th of February, as in the contract stated, and transferring to the Orange and Alexandria Railroad Company the charter, franchises, and all the property of the Manassas Gap Railroad Company. One of the conditions stated in the contract was, however, that the Orange and Alexandria Railroad Company should assume the debts of the Manassas Gap Railroad Company in the manner in said contract set forth, and no other; that is to say, that the President and Directors of the Orange and Alexandria Railroad Company should adjust and settle said debts with the creditors, on terms deemed equitable by said President and Directors and said creditors, having regard to the then financial condition of the Manassas Gap Company and the value of the assets thereby transferred, and that said debts should be paid by the issue of the bonds of the Orange and Alexandria Railroad Company to the creditors, according to their respective amounts as agreed on and adjusted by said President and Directors and said creditors, or in such other mode as said parties might adopt. The Court, rejecting the prayers of the plaintiff, granted the prayer of the defendant, instructing the jury that the plaintiff was not entitled to recover. The plaintiff thereupon prosecuted this appeal.

Lyons *vs.* Orange, Alexandria and Manassas Railroad Company.

The cause was argued before BARTOL, C. J., STEWART, MILLER and ROBINSON, J.

*James L. McLane* and *S. Teackle Wallis* for the appellant.

The appellee by accepting a transfer of the charter, franchises, and property of the Manassas Gap Railroad Company, and using the same as its own, become bound for all the debts of the last mentioned company, which the Acts of Assembly required it to assume as one of the conditions of accepting such transfer and exercising such privileges. These Acts were equivalent to a new charter of the consolidated company. On receiving the rights conferred, and fulfilling the obligations imposed by the Acts, the consolidated company was authorized to assume its present name. It had no right to qualify the terms on which it would accept the privileges conferred. The exercise of the privileges authorized by the Acts, imposed the obligations on which such exercise was authorized, and a contract to fulfil them will be implied. *Angell & Ames on Corporations,* 69 *and* 72, *of old edition,* 81 *and* 87, *of new edition; Zabriskie vs. Cleaveland and Cincinnati R. R. Co.,* 23 *Howard,* 381-97; *Bissell vs. City of Jeffersonville,* 24 *Howard,* 287, 300; 2 *Robinson's Practice,* 397; 3 *Robinson's Practice,* 335; *Bank of Columbia vs. Patterson,* 7 *Cranch,* 299, 302-5; *Rex vs. Westwood,* 20 *E. C. L. Rep.,* 58; *Ehrenzeller vs. Union Canal Co.,* 1 *Rawle,* 190; *Owen vs. Purdy,* 12 *Ohio, State Rep.,* 77, 8; *Penobscot Boom Corporation vs. Lamson,* 16 *Maine,* 230; *Blanchard vs. Maysville Road,* 1 *Dana,* 87, 8, 9.

From the use of the new name the Court will infer that every prescribed prerequisite, including the assumption of the debts had been fulfilled. *Bank of United States vs. Dandridge,* 12 *Wheaton,* 70. The acceptance of the terms of the law may be inferred from the acts of the company. *Zabriskie vs. Cleaveland, Columbus and Cincinnati R. R. Co.,* 23 *Howard,* 381-97; *Bissell vs. City of Jeffersonville,* 24 *Howard,* 300. The law raises an implied assumption, even in *invitum* to fulfil all legal obligations. When it entitles one to money to be paid by

another, it implies an assumption to pay, on which an action will lie. *Mayor, &c., of Baltimore, vs. Howard,* 6 *H. & J.,* 383-94; *Blanchard vs. Maysville Road,* 1 *Dana,* 87, 88, 89.

If the companies meant to accept the Acts of Assembly on terms inconsistent with the Acts, the contract between the companies was valid so far as consistent with the Acts, and void so far as repugnant thereto—valid as to the transfer of the franchises and property of the Manassas Gap Railroad Company to the Orange and Alexandria Railroad Company, and the assumption by the latter of the debts of the former, and void as to the conditions of the assumption which were inconsistent with the law. The terms and conditions which the two companies sought to add, left it discretionary with the consolidated company, according to its construction of the contract, to pay the debts or not as it pleased, a discretion which it exercised by refusing to make any settlement or payment whatever. The Acts provided, that when the Manassas Gap Company, by the transfer of its property, parted with the means of paying its debts, and by the transfer of its charter, went out of existence, the company to which the property and charter were so transferred should become liable for the debts of the company so disabled and annihilated.

If the law did not imply a contract to pay the debts on which an action would lie, it certainly imposed the obligation to assume them. The action was maintainable upon the refusal to assume them, and the amount of the debts, in such form of action, is the measure of damages. If one refuses to give a note, which he is bound to give, he may, even before the time when the note would have matured, be sued for such refusal, and a judgment recovered against him for the amount of the note he should have given. Under the agreement waiving errors in pleading, a count appropriate to this form of action is to be considered in, if necessary. 2 *Parsons on Contracts,* 486, 487, *old edition ;* 3 *Parsons on Contracts,* 281, *of new edition; Rinehart vs. Olwine,* 5 *Watts & Sergeant,* 157.

Lyons *vs.* Orange, Alexandria and Manassas Railroad Company.

If necessary to rely on the implied contract, it was one implied between the creditor and the party bound to pay. If on the obligation to assume the debts it was an obligation between the same parties ; in either aspect of the case, there was sufficient privity between the parties to this cause for the maintenance of the action. The Acts of Assembly, however, accepted and acted on, constituted a contract between them. *Smith vs. Ches. & Ohio Canal Co.,* 14 *Peters,* 45, &c.; *Bend vs. Susquehanna Bridge and Bank Co.,* 6 *H. & J.,* 128-31.

Even if the contract be regarded as one exclusively between the two companies, the appellant is entitled to maintain his action for the money, which by it ought to be paid to him. *Baltimore and Ohio Railroad Co. vs. Foley,* recorded in Liber G. E. and J. S. F., No. 1, folio 127, of "Opinions Unreported;" 3 *Robinson's Prac.,* 18, 22 ; *Clapper vs. Union Bank,* 7 *H. & J.,* 92, 104; *Owings vs. Owings,* 1 *H. & Gill,* 488 ; *Johnson vs. Evans,* 8 *Gill,* 155; *Cecil Bank vs. Farmers' Bank,* 22 *Md.,* 148 ; *Ross vs. Milne,* 12 *Leigh,* 224.

The remedy given by the Acts authorizing the Manassas Gap Company to resume its rights under certain circumstances is a cumulative one, for the benefit of that company, not intended to exclude the rights of the creditors. Still less was it intended to authorize the two companies to combine together and deprive the creditors of all rights whatever. *Mayor, &c., of Baltimore vs. Howard,* 6 *H. & J.,* 383-94.

The transfer of the charter and franchises of the Manassas Gap Railroad Company worked a dissolution of that corporation. It has no longer any existence—cannot be sued by its creditors—has no officers upon whom process could be served —no property out of which a judgment could be realized—no existence to enable it to maintain an action against the appellee. If the appellant is not entitled to the remedy he now seeks, he has none—the appellee has the road which he helped to build, without having paid for it, or being under any legal obligation to pay for it. *Angell & Ames on Corporations, page 736, sec. 42, of old edition.*

*J. Randolph Tucker*, for the appellee.

There is no legal contract between the defendant and the plaintiff. No privity exists between them. The contract relied on is one between the two companies, but there is none upon which the plaintiff can maintain an action against the defendant. 1 *Strange's Rep.*, 592; *Ross vs. Milne*, 12 *Leigh*, 204.

There is no consideration to sustain any such contract if made, and a consideration must be proved. It is a contract, if one be presumed, to answer the debt of another, and is without consideration. *Sloan vs. Wilson*, 4 *H. & J.*, 322; *Raymer vs. Sim*, 3 *H. & McH.*, 451; *Rogers vs. Waters*, 2 *G. & J.*, 64; *Andre vs. Bodman*, 13 *Md.*, 241; *Nabb vs. Koontz*, 17 *Md.*, 283.

The contract being to answer the debt of another, must be in writing under the statute of frauds. There is no such contract proved in this case. A contract between the companies is not a contract between the plaintiff and defendant. The *lex loci contractus* governs here. *Code of Va.*, ch. 143. No implied contract will be raised where there is an express one. *Hannan vs. Lee*, 1 *H. & J.*, 131; *Stockett vs. Watkins*, 2 *G. & J.*, 326. There is an express contract between the companies, upon which alone the plaintiff may rely; for any implied contract, not resting on this express one, is void under the Statute of Frauds. The plaintiff, therefore, can only recover on the express agreement, and that agreement, as the plaintiff concedes, is no promise to pay. There is no valid contract proved between the companies. The contract proved was subject to the approval of the stockholders of each company. No approval by the stockholders of the Manassas Gap Company is proved, nor is there any evidence tending to prove it.

The Manassas Gap Company is still an existent corporation. It is not merged in the new corporation as between itself and its creditors. Its original promise still binds it. The obligation of the defendant is collateral to the original undertaking, and is thus subject to all the objections referred

to under the Statute of Frauds. *Code of Virginia*, *ch.* 56, *sec.* 30.

The defendant binds itself by the contract to pay ratably all debts in proportion to the assets received. The recovery must be on this contract, or not at all. The plaintiff is in this dilemma: The Act of Assembly constitutes the new corporation sued, or it does not. If it *does not*, (because the contract made was not according to the law,) then the corporation sued has no being. If it *does* constitute the new company, it must be because the contract made complies with the Act, and that being so, the recovery must be on that contract, or not at all. But that contract, as the appellant concedes, does *not promise* to pay. Hence the plaintiff cannot recover upon it. The *express* promise does not sustain this action, and no promise can be *implied* against the defendant, in the teeth of the express promise. That contract binds the defendant only in respect of assets, and to a ratable payment of all debts out of said assets. This is, in substance, the provision on a dissolution of a corporation, under the Code of Virginia, ch. 56, sec. 30.

ROBINSON, J., delivered the opinion of the Court.

This was an attachment on warrant by the appellant against the appellee, to recover an indebtedness originally due to him by the Manassas Gap Railroad Company, and which it was claimed the appellee had assumed or become liable to pay.

It appears that negotiations were pending in regard to the transfer of the charter, franchises and property of the Manassas Gap Company to the appellee, and therefore to enable the parties to make this transfer, and for the purpose also of conferring other powers and privileges upon the corporation to be formed by the consolidation of these companies, the Legislature of Virginia passed the following Act of Assembly: " An Act to authorize the transfer of the property, charter and franchises of the Manassas Gap Rail-

road Company, and the stock shares in the same, to the Orange and Alexandria Railroad Company.

"WHEREAS a petition has been presented to the General Assembly, by the President of the Manassas Gap Railroad Company, setting forth that a contract is being negotiated between said company and the Orange and Alexandria Railroad Company, whereby the charter, franchises and all the property of the Manassas Gap Railroad Company shall be transferred to, and vested in the Orange and Alexandria Railroad Company; and, also, whereby all the stock held in said company, whether by the State or by the city of Alexandria, by counties or by individuals, shall, with the consent of the stockholders, be transferred to and merged in the said Orange and Alexandria Railroad Company, upon the said last mentioned company complying with, and performing the terms, stipulations and conditions herein set forth, to wit:

"That the Orange and Alexandria Railroad Company shall commence the rebuilding and construction of the Manassas Gap Railroad Company, within four months from the passage of this Act, and complete it to Harrisonburg within two years from said date, and that the said Orange and Alexandria Railroad Company shall assume the payment of all the debts due by the said Manassas Gap Railroad Company, whether bonded or floating, and whether now ascertained or to be ascertained; and that the charges for transportation of local freight and passengers shall be the same *pro rata* on the lines of the Manassas Gap and Orange and Alexandria Railroad Company. * * * * Now, therefore,

"1. *Be it enacted,* That the said companies be and they are hereby authorized and empowered to enter into a contract containing substantially the provisions above set forth, and with the conditions and restrictions above recited.

"2. That when the proposed agreement between the two companies is effected and confirmed by the stockholders of

both companies, the charter, franchises " * * * * " the road and all the property and rights of the Manassas Gap Railroad Company shall be transferred to, and the title to the same be vested in the Orange and Alexandria Railroad Company."

The subsequent sections authorizing the appellee, upon the transfer of the charter, to assume the name of *The Orange, Alexandria and Manassas Railroad Company*, with the power to increase the capital stock and borrow money, it is unnecessary to insert.

Now, this Act of Assembly, being an additional grant of powers and privileges to the appellee, an existing corporation, upon certain terms and conditions, it will be conceded that it could not operate or have any binding effect unless accepted. Was it thus accepted, is the question upon which the plaintiff's right to recover must depend.

It appears that at the time of the trial, the appellee was, and for a long time prior thereto, had been in possession of, and was exercising acts of ownership over the franchises, cars, and other property of the Manassas Gap Company, and had adopted and was known only by the name of the Orange and Alexandria and Manassas Gap Company. From this evidence, if standing alone, it might have been inferred that the appellee had accepted the Act of 1867, upon the terms and conditions therein prescribed, because it is well established, that acceptance may be inferred from the exercise of corporate powers, or other unequivocal acts on the part of the corporators. But this presumption, however well founded, cannot prevail against the direct proof to be found in the following contract, executed by the two companies, declaring, in express language, the terms upon which the transfer of the charter and franchises of the Manassas Gap Company to the appellee was made, and to which its acts of possession and user, relied on by the appellant, are to be referred: " Whereas, the General Assembly, did by an Act passed February 14th, 1867, authorize the transfer of the property,

charter and franchises of the Manassas Gap Company, and the stock-shares in the same, to the Orange and Alexandria Railroad Company, on certain terms and conditions therein set forth, and did confer certain other powers and rights on the Orange and Alexandria Company set out in said Act; and whereas, the said companies have accepted the provisions of said Act as hereinafter stated, now, this agreement, made and entered into this 25th day of April, 1867, between the Manassas Gap Railroad Company and the Orange and Alexandria Railroad Company, witnesseth as follows, to wit:

"It is agreed between the said companies, that the charter, franchises and all the property of the Manassas Gap Company, shall be and are hereby transferred to and vested in the Orange and Alexandria Railroad Company," * * * "that the said Orange and Alexandria Railroad Company shall assume the payment of all debts due by the said Manassas Gap Company in the following manner and form, and none other; that is to say, the President and Directors of the Orange and Alexandria Railroad Company shall adjust and settle said debts with the creditors on terms deemed equitable by the said President and Directors and said creditors, having regard to the present financial condition of the Manassas Gap Company and the value of their asssts. * * *

"And it is expressly understood, as a fundamental condition of this contract, that the Orange and Alexandria Railroad Company shall not be bound for more or a greater amount of said debts, or in any other, or different proportions or mode of payment, than shall be finally adopted and agreed upon by the President and Directors of the Orange and Alexandria Railroad Company and the creditors as aforesaid.

"And it is further agreed, that this agreement is subject to the ratification, approval and confirmation of the stockholders of the said companies respectively.

"Edw'd C. Marshall, [Seal.]
Pres't Man. Gap R. R. Co.

"The Orange and Alexandria Railroad Company, by
"John A. Barbour, Pres't."

The question of acceptance must, therefore, depend upon the legal effect and operation of this contract. That the parties to this instrument did not intend, by its execution, to accept the terms and conditions of the act of 1867, we think too clear for controversy. The very recital states that, " Whereas, the General Assembly of Virginia did, by an Act passed February 14, 1867, authorize the transfer of the property, charter and franchises of the Manassas Gap Company, on certain terms and conditions *therein set forth,* * * * and whereas, the said companies have accepted the provisions of said Act as *hereinafter stated,* now, this agreement *witnesseth,*" &c. Having thus declared the purpose to accept only such of the terms of the statute as are set forth in the contract, the appellee agrees to assume the debts of the Manassas Gap Company, ratably, in proportion to the value of the assets transferred by said company. And, to be the more explicit, if possible, on this point, it is declared as a *fundamental* condition of the contract, that the appellee " *shall not be bound for more or a greater amount* of said debts, or in *any other or different proportions.*" Here, then, is a direct refusal on the part of both companies to accept the powers and privileges conferred by the statute upon the conditions prescribed.

But it is insisted that the appellee had no right to qualify the terms of its acceptance, and that if it meant to accept the statute on terms inconsistent with its provisions, the acceptance was valid so far as consistent, and void so far as repugnant thereto—valid as to the transfer of the franchises and property of the Manassas Gap Company, and the assumption by the appellees of the debts of the former, and void as to the conditions of the assumption, which are inconsistent with the law. In other words, in accepting the privileges conferred by the statute, the appellee necessarily became liable to the burthens imposed.

As a general rule it is true that, when a charter is granted, whether it be one of creation or an amendment to a preëxist-

ing corporation, it must either be accepted or rejected as offered, and without condition; and that, in accepting the privileges conferred, the grantees will be required to perform the conditions imposed. *Angell & Ames on Corp.*, 85; *Grant on Corp.*, 19; *Rex vs. Westwood*, 20 *Eng. Com. Law Rep.*, 58. But however well settled this may be in regard to subsequent conditions, to be performed after the organization of the company, and for a refusal to comply with which a party injured may have his remedy at law or in equity for a specific performance, it does not apply to conditions precedent, upon the strict performance of which the very existence and exercise of powers on the part of the corporation depend. And by conditions precedent we mean anything which, by the express provisions of the statute, is made a condition to be performed on the part of the *corporators before and as a foundation* of the exercise of powers and privileges under the charter. 1 *Redfield on the Law of Railways*, 171.

In such cases the organic life of the corporation depends upon a strict compliance with the conditions imposed, and until this is done there can be no such thing as an acceptance of the charter.

In this case the two companies were empowered, by the first section of the Act of 1867, to make a contract in regard to the transfer of the franchises and property of the Manassas Gap Company, to the appellee, upon certain "*terms, conditions* and *restrictions*," set forth in the preamble to the statute. One of these conditions required the appellee to assume "the payment of all debts due by the Manassas Gap Company, whether *bonded* or *floating,* and whether ascertained or to be ascertained; and the second section provided that when such an agreement was executed and confirmed by the stockholders of the two companies, the property and charter of the Manassas Gap Company should vest in the appellee. Here, then, was a special power conferred, to be exercised upon certain terms and conditions. The two companies were empowered to make a contract of transfer, provided the appellee assumed the payment of all the debts of the Manassas Gap Company,

and when the contract thus made was confirmed by the stockholders, the property and franchises of said company were to vest in the consolidated company. No such contract, however, was made; but, on the contrary, by the agreement of the 25th of April, the appellee *expressly refused* to assume the debts of the former company upon *the terms prescribed by the statute.* It surely will not be said that an assumption to pay the debts of a company, admitted to be hopelessly insolvent, ratably, according to the value of its assets, is substantially an agreement to pay its debts in full, " whether bonded or floating, ascertained or to be ascertained." Such a contract, in our opinion, is inconsistent with and repugnant to the plain and unequivocal provisions of the Act. The condition precedent, in consideration of which the amendment to the charter of the appellee was granted—namely, its assumption to pay the debts of the Manassas Gap Company—has never been complied with, and until this is done, neither the execution of a contract, which these companies were not empowered to make, nor acts of user under it, will operate as an acceptance of the amended charter.

This view of the case works no injustice to the appellant. The debt for which he sues, was not incurred by the appellee, nor upon the faith of the contract of April the 25th, but was created by the Manassas Gap Company long prior to the Act of 1867. The fact that the latter company, dismantled and bankrupt by the ravages of civil war, has been rebuilt by the energy, enterprise and credit of the appellee, cannot surely impair the security of his debt, or afford any just ground of complaint.

In what we have said, we are not to be understood as intimating any opinion in regard to the liability of the appellee for debts created upon *the faith of the consolidated company.* That question would depend upon other principles which it is now unnecessary to consider.

For these reasons the judgment below will be affirmed.

*Judgment affirmed.*

(Decided 12th January, 1870.)