Granby Mining Co. v. Richards.

GRANBY MINING AND SMELTING COMPANY v. RICHARDS,
*Plaintiff in Error.*

1. Corporation: FAILURE TO FILE CERTIFICATE: STATUTE. Under
the act of the legislature of February 20, 1865 (Acts 1864-5, p. 268),
incorporating the Missouri Petroleum and Mining Company, and
providing that, where a special company is created and organized
thereunder, a certificate in writing stating the name, object, and
amount of capital stock, etc., of the company, shall be filed with
the circuit clerk in the county where the business is carried on and
a duplicate filed with the secretary of state, the failure to file
such certificate with the circuit clerk is not fatal to the existence
of the corporation, but is a mere omission which cannot be taken
advantage of collaterally.

2. ———: DELEGATION OF LEGISLATIVE POWER. The authority to an
officer to issue a certificate of incorporation upon the compliance
of the incorporators with the statutory requirements, is not a
delegation of legislative power.

*Error to St. Louis City Circuit Court.*—HON. W. H.
HORNER, Judge.

REVERSED.

*Walker & Walker* for plaintiff in error.

(1) There is no proof adduced by plaintiff that
defendant and others were copartners trading under the
name and style of the Missouri Zinc Company, and as
such liable for the debt sued for. (2) The Missouri
Zinc Company was a lawfully organized corporation
under the act of February 20, 1865 (Sess. Acts 1864-5,
pp. 268, 269, 270), and its individual members are,
therefore, not chargeable with its debts. (3) The Mis-
souri Zinc Company, if not a corporation *de jure*, was a
corporation *de facto*, and any deficiency in its organiza-
tion can only be inquired into by the state, and not inci-
dentally or collaterally, and its members are not

individually chargeable with its debts either as copartners or otherwise. Sess. Acts 1864–5, pp. 268, 269, 270; *Hamtrank v. President*, 2 Mo. 169; *City v. Shields*, 62 Mo. 252, and cases cited; Cooley's Const. Lim. 254; *Bank v. Almy*, 117 Mass. 476; *Society v. City*, 43 Ohio St. 481; *Railroad v. Railroad*, 32 N. J. Eq. 755; *Williams v. Kocomo*, 89 Ind. 398; *Baker v. Neff*, 73 Ind. 68; *Pape v. Bank*, 20 Kansas, 440; *Thompson v. Candor*, 60 Ill. 244; *Perse v. Willett*, 1 Robt. (N. Y.) 131; *Smith v. Sheely*, 12 Wall. 361; *Coal Co. v. Maxwell*, 22 Fed. Rep. 197.  (4) The General Statutes of 1865, prescribing the mode of incorporating joint-stock companies (chap. 62, sec. 2, page 327), did not affect or govern the mode of organizing the Missouri Zinc Company, which was incorporated under the prior act of February 20, 1865, entitled " An act to incorporate the Missouri Petroleum and Mining Company," and that act expressly exempted the charter of companies formed under it from legislative alterations, suspension, or repeal.  Sess. Acts. 1864–5, pp. 268, 269, 270; R. S., 1855, chap. 34, art. 1, sec. 7, p. 371; *College v. Woodward*, 4 Wheat. 463. (5) The corporate existence of plaintiff being denied by the answer and the denial supported by affidavit, it was incumbent on it to prove the allegation thus put in issue, at least as to the first, second, third, and sixth counts of the petition.  And plaintiff having failed to make this proof it was not entitled to recover.  Sess. Acts 1883, p. 121.

*Noble & Orrick* and *David Goldsmith* for defendant in error.

1) The Missouri Zinc Company was not a legal corporation: (*a*) Because the provisions of the charter of the Missouri Petroleum and Mining Company, under which it was organized, were not complied with. (*b*) Because those provisions were unconstitutional.

Cooley's Const. Lim. [5 Ed.] 139, 116 ; 1 Morawetz on
Priv. Corp. [2 Ed.] p. 17, sec. 15.    (2) The Missouri
Zinc Company not having been legally incorporated, the
plaintiff in error was responsible as a partner for its
indebtedness to the defendant in error.    *Martin v.
Fewell*, 79 Mo. 401 ; *Hurt v. Salisbury*, 55 Mo. 311 ;
*Richardson v. Pitts*, 71 Mo. 128 ; *Kaiser v. Bank*, 56
Iowa, 104 ; *Coleman v. Coleman*, 78 Ind. 344 ; *Bigelow
v. Gregory*, 73 Ill. 197 ; *Garnett v. Richardson*, 35 Ark.
144.

BLACK, J.—This action is based upon five promis-
sory notes and an open account, and which, without the
credits, aggregate seventy-five thousand dollars.    The
notes are dated in 1881 and 1882, and are signed " Mis-
souri Zinc Company," some of them by " T. T. Richards,
Treas.," and others by "Eben Richards, Prest."    The
open account is for a balance for zinc sold in 1881.    The
petition alleges that the defendant, Eben Richards, and
others not made defendants, were partners doing busi-
ness under the name of the " Missouri Zinc Company,"
and as such executed the notes and incurred the indebt-
edness.    There was a judgment against the defendant
for $49,743.33, and he sued out this writ of error.

That the plaintiff corporation supposed the Missouri
Zinc Company was a corporation, and made all of the
transactions in question with it as such, is clearly shown.
The Missouri Zinc Company has, and has had, a board
of directors and other officers since 1869 ; and the defend-
ant supposed that he was but a shareholder and officer
in a corporation, and never professed to be doing business
as a partner with the other persons.    The plaintiff pre-
vailed in the circuit court on the ground that the Mis-
souri Zinc Company was not a legally organized
corporation, and defendant was held liable as a partner,
with the named persons.    The defendant insists (1) that
his company was, and is, a corporation duly organized

under the charter of the Missouri Petroleum and Mining Company ; (2) that, if it is not a corporation *de jure,* it is, and was, a corporation *de facto;* (3) that in either case the members of the company are not chargeable for its debts as partners. The special act of February 20, 1865 (Acts of 1864-5, p. 268), makes designated persons, their associates and successors, a perpetual body corporate by the name of the Missouri Petroleum and Mining Company, with power to mine coal, lead, iron, and other minerals, to bore for oil, etc., to refine the same for trade, to quarry stone, and to buy, sell, and lease real estate. The capital is not to exceed two million dollars ; the chief office to be at St. Louis ; and the corporation not to be subject to the seventh, thirteenth, fourteenth, fifteenth, eighteenth, nineteenth, and twentieth sections of the first article of the corporation law of 1855. It is also provided : "And said corporation shall have power to create and dispose of special stock in any one or more of its mining or other operations, which special stock shall be no part of the general stock of the corporation, nor shall its holders be liable for, or interested in, any other than the special property and business for which said special stock shall be created ; the holders of said special stock, when the same shall have been taken, may become a distinct company, under the name and style designating such special enterprise, and may elect its own officers and exercise all the general powers and enjoy all the privileges of a distinct corporation under the provisions of chapter 34 of the Revised Statutes of 1855, entitled 'An act concerning corporations,' approved November 23, 1855, with exemption from the provisions of the seventh, thirteenth, fourteenth, fifteenth, sixteenth, eighteenth, and twentieth sections of the first article of said act." It is also provided that "when such special company or companies are created and organized, a certificate in writing shall be filed in the office of the circuit clerk of the county

in which the business of the company is carried on, and a duplicate thereof in the office of the secretary of state, which certificate shall state the name, object, amount of capital stock of said company, and the number of shares of its stock, and the number and the names of the directors of such company, also stating the names of the towns and county or counties in which the operations of such company are to be carried on, said certificate to be signed by the president of such company with its seal affixed thereto." Laws 1865, p. 269.

Defendant became a subscriber for fifty shares of special stock at the organization of the Missouri Zinc Company in 1869. A certificate of its organization was then made out in due form, under the above quoted provisions, and filed with the secretary of state in March, 1869. By this certificate the main office of the special company is located at St. Louis, and it states that the mining and other operations are to be carried on in St. Louis and Washington counties, and in such other towns and counties in the state as the business of the company may require ; but this certificate was never filed in the office of the clerk of the circuit court in either of those counties.

1.    The first question is, whether the failure to file the certificate with the clerk of the circuit court makes the defendant liable for the debts of the association. In the case of *Hurt v. Salisbury*, 55 Mo. 311, the articles of association were in due form, had been filed in the recorder's office, but not with the secretary of state. The general law, by virtue of which the association was attempted to be created, made it the duty of the officers to file a copy of the articles of association with the secretary of state, and provided that "the corporate existence of such corporation shall date from the time of filing said copy of such articles." It was held that, until the officers took this final step, the corporation had no power to issue the note there sued upon, and

hence the defendants, who were directors, were liable. They had signed the note as directors. That, and the subsequent case of *Richardson v. Pitts*, 71 Mo. 128, proceed upon the ground that conditions precedent to corporate existence had not been performed. But, as said in *Mining Co. v. Woodbury*, 14 Cal. 424, there is a broad and obvious distinction between such acts as are declared to be necessary steps in the process of incorporation, and such as are required of the individuals seeking to become incorporated, but which are not made prerequisites to the assumption of corporate powers. In respect to the former, any material omission will be fatal to the existence of the corporation, and may be taken advantage of, collaterally, in any form in which the fact of incorporation can properly be called in question. In respect to the latter, the corporation is responsible only to the government, and in a direct proceeding to forfeit its charter.

Now the question in this case is to be determined by the special act before quoted, not by the general law, as in *Hurt v. Salisbury*, *supra*. It is true that some of the sections of chapter 34, Revised Statutes, 1855, are made a part of the charter; but they have no relation to the organization of the corporation. By the special act incorporating the Missouri Petroleum & Mining Company, the disposal of special stock in one of its operations, and the organization of a special company, are matters to be performed by and under the supervision of the directors of the parent company. All this seems to have been done in the present case, and made matter of record on the books of the parent company. The act says: "When such special company or companies are created and organized, a certificate shall in writing be filed," etc. This language does not indicate, nor is there anything in the general scope of the act to indicate, that the filing of the certificate with the circuit clerk is made a matter of condition precedent to the

assumption of corporate powers, or the execution of corporate contracts. The failure to file the certificate with the clerk of the circuit court is an omission of which the state alone can complain. This conclusion is not inconsistent with *Kaiser v. Bank*, 56 Iowa, 104; *Bigelow v. Gregory*, 73 Ill. 197, or the cases before cited from this court; for the language of the law in these cases was essentially different from that in this case. But the rule of *Hurt v. Salisbury*, *supra*, ought not to be extended.

2. That the power to make laws cannot be delegated by the legislature, is conceded on all hands; and plaintiff says the act of February 20, 1865, so far as it authorized the organization of the Missouri Zinc Company, was a delegation of legislative power. Morawetz says: "It seems, therefore, that a general power to confer corporate franchises cannot be delegated by the legislature to any other agent. However, where the legislature has enacted that a corporation may be formed upon compliance with certain conditions, it is no objection that ministerial duties, such as the issuing of a certificate or charter, must be performed by some officer before the incorporation takes effect." 1 Morawetz on Priv. Corp., sec. 15. That corporations may be organized under general laws is no longer a debatable question. The powers of this corporation, The Missouri Zinc Company, and the procedure by which it could be brought into existence, were all fixed and prescribed by statute law, perfect as it left the hands of the legislature. The object seems to have been to enable the parent company to separate from its business some of its mining or other operations. Since corporations may be created under general laws, we do not see how it can be said this law is invalid. We think it is valid, as against any objection made to it.

3. We do not see how the General Statutes of 1865 can have anything to do with the organization of this

corporation. The seventh section of article 1, of chapter 34, Revised Statutes of 1855, does declare that the charter of every corporation thereafter granted shall be subject to alteration and repeal; but that section is, by the special act of February 20, 1865, excluded from any application to the corporations organized thereunder.

We conclude that, upon the undisputed facts of this case, the judgment should have been for defendant. Judgment reversed. All concur.