Johnson, J.
The attack upon the judgments below is based upon the contention that the plaintiff company on the hearing in the insolvency court failed to make the showing required by Section 11046, General Code, before it was entitled to the order prayed for; that it is disclosed by the record that the plaintiff was not the real party in interest, but was attempting to appropriate the property for the sole use and benefit of another corporation, contrary to law and to public policy, and that the plaintiff never had any legal existence, was never or *164 ganized in compliance with the laws of Ohio and “had no right to make the appropriation.”
The defendant in error controverts these contentions and insists that the defendant landowner is not entitled to raise the questions suggested, but that such action can only be taken in a proceeding in quo warranto brought by the state. The proceeding is one to take private property in the exercise of the right of eminent domain.
The constitution guarantees that private property shall ever be held inviolate, but subservient to the public welfare. Only the sovereign power, or one to whom it has delegated the right, can take private property without the consent of the owner. When this right has been granted the terms of the grant must be strictly pursued. When the matter is in doubt it must be resolved in favor of the property owner.
As stated in Currier v. The Marietta & Cincinnati Rd. Co., 11 Ohio St., 228, 231, “There is no rule more familiar or better settled than this: that grants of corporate power, being in derogation of common right, are to be strictly construed; and this is especially the case where the power claimed is a delegation of the right of eminent domain — one of the highest powers of sovereignty pertaining to the state itself, and interfering most seriously, and often vexatiously, with the ordinary rights of property.”
This principle has been constantly adhered to by this court. Miami Coal Co. v. Wigton, 19 Ohio St., 560, 566; City of Cincinnati v. The L. & N. Rd. *165 Co., 88 Ohio St., 283, 296, and see 1 Lewis on Eminent Domain (3 ed.), Section 387.
In referring to the subject in an early case it was said: “It is the duty of the court in such a case, to keep them strictly within their granted powers.” Moorhead et al. v. The Little Miami Rd. Co., 17 Ohio, 353.
Section 11046, General Code, defines the duty of the court, viz.: “On the day named in a summons first served, or publication first completed, the probate judge shall hear and determine the questions of the existence of the corporation, its right to make the appropriation, its inability to agree with the owner, and the necessity for the appropriation. Upon all these questions the burden of proof shall be upon the corporation, and any interested person shall be heard.”
It has been uniformly held by this court that the railroad company has not the exclusive power to determine the questions referred to in that section, but that, while the corporation has primary discretion in determining what land is necessary for the purpose for which it is authorized to make appropriations, the probate judge has, under the jurisdiction vested in him by that section, power to hear and determine the questions referred to, including the right of the corporation to make the appropriation and the necessity therefor. The Wheeling & Lake Erie Rd. Co. v. Toledo Ry. & Terminal Co., 72 Ohio St., 369; City of Cincinnati v. The L. & N. Rd. Co., 88 Ohio St., 283.
It was clearly not the intention of the legislature to confer upon the railroad corporation conclusive *166 power to determine its right to make the appropriation and the necessity therefor. The final power has been conferred upon the court. This is an important phase of the controversy.
It is manifest from the language used by some of the courts in the cases which have been cited by the defendant in error, that the state of the law in the jurisdictions where they were decided is different from the Ohio law on the subject. It.is important that this should be borne in mind in considering those cases. Examination shows that the original statutory provisions in Ohio were subsequently changed in the light of experience. The changes were made in order to furnish a more adequate means to protect private property.
By the ninth section of the original railroad act of February 11, 1848 (2 Curwen, Revised Statutes, 1396), the company is expressly authorized to appropriate such property as may be deemed necessary for its railroad, including necessary sidetracks, etc., and the act of 1852 provided that on failure to agree with the owner a corporation desiring to appropriate land for its right of way should file notice with the probate court to that effect, and that the probate court should at once take the necessary steps for the impaneling of a jury to estimate values and the amount of compensation the owner should receive.
In Giesy v. The C., W. & Z. Rd. Co., 4 Ohio St., 308, the constitutionality of this act was upheld. Judge Ranney, however, in announcing the opinion said: “It would seem to me much more consistent with a proper regard for private rights, that the *167 question of necessity as well as compensation should here, as in England, be determined by some impartial public tribunal.” It was after the case of Giesy v. The C., W. & Z. Rd. Co. was decided that the statute was passed, substantially in its present form, and in referring to the language of Judge Ranney, Judge Summers, in The Wheeling & Lake Erie Rd. Co. v. Toledo Ry. & Terminal Co., supra, at page 379, inquires: “Is it not probable that the submission of the question 'of the necessity of the appropriation to the determination of the probate judge was but the adoption of the suggestion of an eminent judge of this court?”
Since the adoption of the statutory provision now in force the probate court, or the insolvency court, is not concluded by the action of the corporation itself upon any questions referred to in that section.
There is a plain provision that all of the facts must be inquired into and that any interested person may bring anything before the court that will assist it in arriving at a just conclusion upon any one of the four questions referred to in the section.
In this case the first contention is that the plain-j tiff company has no legal existence as a corporations and, therefore, no right to make the appropriation. \ We think it can be truthfully said that none of the courts in this country has more firmly or more con- * sistently looked through corporate forms than has this court. It has uniformly held that in the creation of corporations there must be full compliance with the statutes and that when created they must keep within their powers. Yet it has given full *168 recognition to the important part they have played in the development of our resources and business, and to the necessity of protecting them in the exercise of their legitimate functions.
That a corporation is a legal entity, apart from the natural persons who compose it, is a mere fiction, introduced for convenience in the transaction of its business and of those who do business with it; but like every other fiction of the law, when urged to an intent and purpose not within its reason and policy, it may be disregarded. State, ex rel., v. Standard Oil Co., 49 Ohio St., 137. And also The Cincinnati Volksblatt Co. v. Hoffmeister, 62 Ohio St., 189; First Natl. Bank of Chicago et al. v. Trebein Co. et al., 59 Ohio St., 316.
The corporation- statutes of Ohio differ from those of many states in reference to the creation of a corporation. Section 8629, General Code, provides that a certified copy of the articles of incorporation shall be prima facie evidence of- the existence of the corporation therein named, but the mere filing of the articles in due form does not create the corporation. This is the distinct holding in State, ex rel., v. Insurance Co., 49 Ohio St., 440, where it is held: “The making and filing, for the purpose of profit, of articles of incorporation in the office of the secretary of state, do not make an incorporated company; such articles are simply authority to do so. No company exists within the meaning of the statute, until the requisite stock has been subscribed and paid in, and the directors chosen.”
*169 Sections 8633 and 8635, General Code, require that ten per cent, of the capital stock shall be subscribed and this fact certified by the incorporators to the secretary of state before an election of directors may be held; Section 8632, that at the time of making a subscription to the capital stock ten per cent, on each share subscribed for shall be payable, and Section 8636 that no person shall voté on a share of stock on which an installment is due and unpaid. It is provided by Section 8661 that all directors shall be holders of stock of the company for which they are chosen.
In The Dueber Watch Case Mfg. Co. v. Daugherty, 62 Ohio St., 589, in which a corporation issued a certificate of stock to a citizen of Ohio for the purpose of qualifying him as a director, with the agreement that he should retransfer it upon ceasing to be a director, the court in the statement say: “Unless Coburn was a stockholder, the company had no right to be a corporation and do business in the state as such.” And in the opinion it is said: “The transaction was a fraud upon the law and contravened the declared policy of the state, if Goburn was intended to be a nominal, and not the real owner in fact, of the stock placed in his name.”
The provisions of the statute to which we have referred are mandatory and they must be complied with before it can be said that the existence of the corporation, or its right to make an appropriation, has been shown.
This has been well stated by Spear, J., in The Queen City Telephone Co. v. City of Cincinnati, 73 Ohio St., 64, 77: “Sections 3243, 3244, and 3245, *170 Revised Statutes, taken together, require that an installment of ten per cent on each share of stock shall be payable at the time of making the subscription; that as soon as ten per cent of the capital stock is subscribed notice for the election of directors may be given; that no person shall vote for directors for any share on which any installment is due and unpaid, and the votes of a majority of the number of shares shall be necessary for a choice. Tested by these requirements the record shows that there had been no legal election of directors, and that the corporation had not been organized in such manner as to entitle it to a decree under Section 3461.”
The fact that the case we are considering is a proceeding seeking to exercise the right of eminent domain makes especially forcible the application of the principles we have set forth.
In Powers v. The Hazelton & Letonia Ry. Co., 33 Ohio St., 429, it is held that it is essential to a judgment of condemnation that the company should prove its corporate existence and that it has complied with the law giving it the right to exercise the right of eminent domain.
That there must be a due and legal election of directors; that persons having no interest in .the stock, but fraudulently and collusively receiving the transfer of a share to qualify them, are not eligible; that votes cast for a person not eligible do not even make a de facto director, are propositions- well established. Bartholomew v. Bentley et al., 1 Ohio St., 38; The Queen City Telephone Co. v. City of Cincinnati, supra; 2 Cook on Corporations (7 ed.), Section 623.
*171 In 10 Cyc., 737, it is said that in the absence of statutory provision “this is the implication of the common law, founded on grounds of public policy in the case of railway companies. This means a real and not a sham shareholder.”
In this case the formal details, such as the preparation and filing of the articles of incorporation, the signing of waivers of notice, the opening of books of subscription, the filing of a certificate of subscription with the secretary of state, the waiver of notice of stockholders’ meeting and the election of directors, are all set out in the minute book. But it is shown by the testimony of directors themselves and the secretary and treasurer that the company never kept any books of account, never had any bank account, there was no certificate book, or other books except the minute book, the shares were written on blanks, which were unnumbered and unidentified, and there was no statement on them of the authorized capital stock. One of the incorporators, who was a director, testified that after the certificate of incorporation was received, he paid in the sum of $1,000, which was ten per cent, of the' authorized capital stock of the company, but the treasurer testified that there were no books or papers which showed that the director referred to had paid the money to the company for this stock and that he had nothing to show for that. The' other directors admit that they never paid for any shares of stock, and some say that after they received them they indorsed them in blank and handed them back to the party from whom they received them. With the exception of the bare statement of *172 Mr. Smartt that he had paid the $1,000 referred to, no payment on any stock is shown, and it is not shown what was done with the $1,000 referred to nor to whom it was paid. The only stock that was ever subscribed for was that originally made by the five incorporators, who each subscribed for two shares at $100 per share. These steps and the original resolution of necessity were taken in 1906, and no further action is shown until the filing of the petition in this case in May, 1911.
The original directors resigned, one after another, as directors and officers, and their places were filled by others, who likewise admit that the same stock was given to them without any payment being made by them.
The ease with which these small holdings were shifted without consideration indicates the lack of real and beneficial interest in the holders. One who has subscribed and paid for or who has purchased stock in a corporation has of course the right to make a bona fide gift of it, and in such case the donee’s title is perfect. And doubtless the originator of a corporation organized in good faith to carry out the purposes stated in its articles, may properly procure the requisite number of signatures to all of the preliminary instruments, including the necessary ten per cent, stock subscription, by making an executed bona fide gift to each of the amount necessary to pay the required 'portion of the subscriptions into the treasury, and this, if done, would fully qualify the recipients to be directors. But from a careful consideration of this record we are not able to find that it discloses such a situation.
*173 We think, therefore, that it cannot be said that the company sustained the burden put upon it by the statute of showing such a legal existence as a corporation as gave it a right to make the appropriation. Where certain acts are absolutely required to be performed, before the corporation comes into existence, these are conditions precedent, and no corporation is created or can exist until those acts are performed. 9 Modern American Law, 42.
Referring to “dummy” corporations, Thompson, in volume 2 of his work on Corporations, Section 1417, says: “These corporations are usually termed ‘dummy’ corporations. Concerning them the New York court of appeals has said: ‘We have of late refused to be always and utterly trammelled by the logic derived from corporate existence where it only serves to distort or hide the truth.’ ”
In order to further sustain the issue on its part the defendant; in the insolvency court, tendered considerable evidence which tended to show that the plaintiff company was endeavoring to acquire a right of way for the sole use and benefit of The Northern Ohio Traction & Light Company, and that the latter company had furnished considerable of the money, and, as the defendants claimed, all of the money, that the plaintiff company ever had.
On objection being made by the plaintiff company all of this testimony was rejected by the court. In defense of this ruling a number of authorities are cited by the defendants in error in support of the proposition that it is no objection that the organization of a plaintiff corporation was promoted or procured by another corporation, or its stockholders, *174 which is specially interested in the enterprise for which the plaintiff was formed and which could not condemn property in furtherance of such enterprise, and that such matters cannot be set up in answer to the plaintiff’s petition to condemn.
The • soundness of this proposition is not. questioned. It is easy to conceive of a situation in which it would contribute to the public welfare, instead of being a detriment to it, if one corporation should lend assistance, financially and otherwise, to the carrying out of the purposes of another corporation which was duly organized and actually proceeding with the performance of its corporate duties and the exercise of its corporate rights, in the accomplishment of the purposes of its organization. But it is a very different thing when one corporation causes a “dummy” corporation to be organized, even if all the forms of the law should be fully complied with, if the latter has no real and bona fide purpose of its own and no intention to attempt to actually carry out the object of its organization as set out in its articles of incorporation.
It is provided in Section 8759, General Code, that “A company or municipal corporation which owns or operates a railroad may enter upon any land for the purpose of examining and surveying its railroad line, and appropriate so much thereof as is deemed necessary for its railroad.” If, as claimed, the plaintiff had no money or resources of its own and ho real expectation of any, but was being used solely by another, it is hard to imagine the necessity of land for its railroad.
*175 In construing this language in the original statute from which it is taken, this court, in Platt v. Pennsylvania Co., 43 Ohio St., 228, 239, approves of the following from the supreme court of Indiana: “A railroad company has no authority to appropriate land for the use of another company and there is no authority of law for several railroad companies >to agree that one of their number shall proceed to appropriate land for the purpose of afterward dividing it for the benefit of all; each company must proceed for itself.”
The defendant should have been permitted to prove, if it could have done so, and should have been permitted to offer testimony tending to prove, that the plaintiff company was not proceeding in the case to appropriate land for “its railroad,” but was proceeding to do so for another company. The rejection of the testimony tendered was a denial of a substantial right. The plaintiff was entitled to maintain the proceeding only when it appeared that it was the real party in interest. Section 11241, General Code.
After the judgment in the insolvency court a suit in quo zvarranto was brought by the attorney general in the court of appeals of Franklin against the plaintiff company for a judgment of ouster. On the hearing the court found that the defendant, the plaintiff company in this case, as it states in its opinion, is and always has been the “dummy” of The Northern Ohio Traction & Light Company; that Smartt, the promoter of the defendant company and “the only person outside of the officers of *176 the former who had any interest in the same, was the hired servant of the Northern Ohio. * * * Its life depends upon the will of its master. It is fair, therefore, to conclude that the appropriation of the property by the defendant was for the benefit of the Northern Ohio and the sale of October 10, 1912, was for the same purpose. * * * It is no answer to say that the Northern Ohio could legally have built this new line without the use of a dummy. For the question is not what the Northern Ohio could or could not do, but what the defendant did do. * * * In appropriating land for the benefit of another company and in transferring such land to that company, the defendant has misused its corporate franchises.”
The judgment of the court ousted the defendant from the right and privilege thereafter of appropriating private property, but the order provided that it should be without prejudice to the rights of defendant to defend the appropriation suits already pending.
The power of that court to provide that the order should be without prejudice as stated, may well be doubted in view of Section 12324, General Code, which provides:
“When it is found and adjudged in such case, that a corporation has offended in a matter or manner which does not work such surrender or forfeiture, or has misused a franchise, or exercised a power not conferred by law, judgment shall be entered that it be ousted from the continuance of such offense or the exercise of such power.”
*177 However, both parties have proceeded in the case at bar without reference to the judgment referred to.
It is clear that the trial judge in the case at bar was of the same opinion as to the “dummy” corporation. On the trial he remarked, “I have not a particle of doubt that the whole thing is a Northern Ohio Traction Company project.”
Nor do we find that the defendant landowner is without legal right to raise the questions made.
It is not questioned that a proceeding to forfeit the franchises of a corporation or to oust it from being a corporation can only be sustained by the state in quo warranto. It is useless to cite authorities in support of that well-settled proposition.
No such affirmative relief is sought in a case of this nature. It is not an attempt of an individual to oust the corporation. It is simply an assertion by the citizen that before he is compelled to yield his right of private property the steps provided by the statute itself must be complied with.
In such a case the only question determined is as to the rights of the parties to- the particular litigation.
The position of this court is well stated in Gaslight Co. v. Zanesville, 47 Ohio St., 35, at page 47:
“That a judgment of ouster cannot be pronounced in any other proceeding is true; but a judgment of ouster in a proceeding in quo warranto, commenced on behalf of the state, is one thing, and a judgment in an action between a company and a private person brought to assert some proprietary claim or *178 alleged obligation of the one to the other, is a very different thing, although the latter judgment may rest upon a conclusion drawn by the court that, as a matter of law, some power' or franchise claimed by the company is not possessed by it. In such judgment the question is simply passed on to determine the rights and obligations of the parties involved in the particular litigation. But it is not available as an adjudication in favor of, or against, other persons ; and the question as to the disputed franchise may be made as often as it arises in litigation between the company and third persons. Not so, however, in a proceeding in quo warranto. The purpose and object of this proceeding is to determine the question once and for all; and by a judgment that shall be binding upon all. It is not a judgment based upon a wrong of the company against any particular individual, but on a wrong as against the entire public — the wrong of usurping the prerogatives of the people, and, if found guilty, the judgment is one of ouster in favor of the entire public. There are evident reasons for limiting a jurisdiction so drastic in its consequences to courts composed of more than one judge, that do not apply to suits of a private character and that can only affect the parties to them, whatever may be the judgment.
“It is neither extraordinary nor unusual to question the powers of a corporation where they are involved in litigation between it and a private person. The franchise to be a corporation, of the power of eminent domain, or any right or privilege that a corporation may claim, may be, and frequently is, questioned by a private individual, whenever in *179 volved in litigation between it and the individual. * * *.
“The capacity to sue and be sued implies power in the opposite party to question the claims of the one clothed with such capacity. If it were otherwise, a private individual would be at great disadvantage in litigation with a corporation: As a proceeding in quo warranto must be brought in the name of the state by the attorney general, or some one else authorized to represent the state, and, as it may not always be convenient, nor possible, for the individual to induce the proper officer to commence the proceeding, he might be compelled to submit to a usurpation by a corporation, however wrongful, and whatever the injury as to him might be.”
In In re Brooklyn, W. & N. Ry. Co., 76 N. Y., 245, it is held that “The legal existence of a corporation authorized to construct a railroad is at the foundation of the right to take property for its use, under the right of eminent domain; it is a fact which it is compelled to allege in proceedings to acquire title to lands, and which may be controverted.”
In N. Y. Cable Co. v. Mayor, 104 N. Y., 1, at page 43, it is said: “Where it is sought to take the property of an individual under powers granted by an act of the legislature to a corporation to be formed in a particular manner therein directed, the constitutional protection of the rights of private property requires that the powers granted by the legislature be strictly pursued, and all the prescribed conditions be performed.”
*180 In St. Joseph & Ia. Ry. Co. v. Shambaugh, 106 Mo., 556, 566, it is said: “The corporate existence of the plaintiff is an issue which may be made in a proceeding to condemn property; for if the plaintiff has no corporate capacity it has no right to prosecute this suit. * * * Where the act of incorporation does not in and of itself confer corporate capacity, but provides for the doing of certain things, upon the doing of which the company shall become a body corporate, the performance of these things constitutes conditions precedent, and until performed the company has no corporate existence. Granby Mining Co. v. Richards, 95 Mo., 110; Hammett v. Railroad, 20 Ark., 204; Lyons v. Railroad, 32 Md., 18.”
In Lyons v. Orange, A. & M. Rd. Co., 32 Md., 18, 30, it is said: “And by conditions precedent we mean anything which, by the express provisions of the statute, is made a condition to be performed on the part of the corporators before and ás a foundation of the exercise of powers and privileges under the charter.”
In Tulare Irrigation District v. Shepard, 185 U. S., 1, 17, it is said: “The case of New York Cable Company v. Mayor, &c., 104 N. Y., 1, 43, is cited to the point that where it is sought to take the property of an individual under powers granted by the state to a corporation to be formed in a particular manner therein directed, the constitutional protection of the rights of private property requires that - the powers granted be strictly pursued and all the prescribed conditions performed, and that hence, if'' the corporation be simply a de facto and not a de *181 jure corporation, it cannot take private property in invitum. The case simply asserts the principle that the right of eminent domain cannot be exercised by a corporation de facto, and that the question of valid organization could be raised when such a corporation sought to condemn lands. That is one of the exceptions to the general rule in regard to a corporation de facto. When a corporation seeks to divest title to private property and to take it for the purposes of its incorporation, it must then show that it is a corporation de jure, for the law has only given the right to take private property to that kind of a corporation.”
As stated by Ranney, J., in Atkinson et al. v. The Marietta & Cincinnati Rd. Co., 15 Ohio St., 21, at page 33: “Corporate existence, and the power to take private property for public uses, can only be derived from legislative enactment. A grant of both are made indispensably necessary to the employment of the process invoked in this proceeding. Before a company can demand a judgment of condemnation, it must show that both have been conferred upon it by a valid law, and that it has substantially complied with the conditions, which the law has annexed to the exercise of its powers.”
We cannot assent to the proposition that there is any sound legal doctrine, or any well-grounded principle of public policy, which would justify a court in permitting itself to be used as an instrumentality in furtherance of the unauthorized exercise of corporate privileges because the state has not acted, and thus deny to property owners rights assured to them by the fundamental law.
*182 The methods pursued in this case may have been dictated by motives that were entirely free from intentional disregard of legal requirements, but, as said in First Natl. Bank of Chicago et al. v. Trebein Co. et al., supra, “The good faith of the parties to such a transaction must be determined by its legal effect on the rights of others.”
The judgments will be reversed and cause remanded to the insolvency court for further proceedings.

Judgments reversed. ■

Nichols, C. J., Donahue, Wanamaker and Matthias, JJ., concur.