THE ST. JOSEPH & IOWA RAILROAD COMPANY, *Appellant and Respondent*, v. SHAMBAUGH.

DIVISION ONE.

1. **Condemnation Proceedings**: APPOINTMENT OF VIEWERS: NOTICE : RAILROAD : CHARTER. Where the charter of a railroad company does not require notice to the property-owner of the intended application to the judge for the appointment of viewers in a condemnation proceeding, but does require the viewers to give notice to the land-owner of the time when they will view the property and assess the damages, due notice of the time of viewing the property and assessing the damages is all that is required.

2. ———: RAILROAD : CORPORATE CAPACITY. A railroad company must be incorporated before it can maintain a suit to condemn property for a right of way, and its corporate existence is an issue which may be made in such proceeding.

3. ———: ———: ———: CONDITIONS PRECEDENT. Where the act of incorporation does not of and in itself confer corporate capacity, but provides for the doing of certain things, upon the doing of which the company shall become a body corporate, the performance of such things constitutes conditions precedent, and, until performed, the company has no corporate existence.

4. ———: ———: ———. Where a charter confers corporate capacity without any conditions precedent, acceptance of the charter is all that need be shown to prove corporate existence.

5. **Railroad**: CORPORATE CAPACITY. The act of January 22, 1857, incorporating the St. Joseph & Iowa Railroad Company (Acts, 1856-7, p. 107) designating the persons who should constitute the first board of directors and prescribing no conditions precedent, was a present grant of corporate powers which came into being upon the acceptance of the charter.

6. ———: ———: ACCEPTANCE OF CHARTER. Where the charter of a railroad company prescribes no mode or time of acceptance, proof that the act creating it was passed at the request of the directors designated therein would show a sufficient acceptance; or acceptance could be inferred from use of corporate powers under the charter or by proof that the company had constructed and operated a part of its road.

7. **Constitutional Law**: VALIDITY OF LEGISLATIVE ACT. An act of the legislature will be presumed to be constitutional until its unconstitutionality is made to appear.

106 557
110 160

106 557
113 142
113 393
114 509
115 577

106 557
125 442

106 557
128 81

106 557
63a 419

106 557
75a 328

106 557
152 477

106 557
101a¹²214

8.  ————: CONSTITUTION OF 1865: ACT REVIVING CORPORATION. Under section 2, article 8, of the constitution of 1865, providing that "no law shall be passed reviving or re-enacting any act theretofore passed creating any private corporation where such corporation shall not have been organized and commenced business within one year from the time such act took effect, or within such other time as may have been prescribed in such act for such organization and commencement of business," the act of March 19, 1866, reviving the St. Joseph & Iowa Railroad Company created before the adoption of said constitution, will be presumed to be valid, in the absence of evidence that the corporation did not organize and commence business within the time specified in said section of the constitution.

9.  ———— : ————: CREATING PRIVATE CORPORATIONS : SPECIAL LAWS: AMENDMENT. While the constitution of 1865 prohibited the creation of private corporations by special laws, the legislature could by special act, amend special charters previously enacted. (*Following State v. Railroad*, 48 Mo. 468.)

10. Condemnation Proceedings : RAILROADS : DAMAGES. The cost of building fences and constructing gates and farm crossings is not an element of damages in favor of the land-owner in a proceeding by a railroad company to condemn land for a right of way, as the statute devolves those duties upon the railroad company.

11. ———— : ————: ————. The inconvenience in going from one part of the farm to another, arising from the road, fences and gates, is a proper element of damages.

12. Repeal of Special Statute by General Law. A mere general affirmative statute does not repeal a prior special one, unless negative words are used, or unless the two acts are irreconcilably inconsistent. But to accomplish a repeal it is not necessary that the subsequent general law use express words of repeal. Any form of expression, showing a clear intention to repeal former special laws, will be sufficient.

13. Constitution: CONDEMNATION PROCEEDINGS : JURY TRIAL. The constitution of 1875, by its own operation repealed all existing laws, whether general or special, so far as they denied a jury in all trials for claims of compensation where an incorporated company seeks to exercise the right of eminent domain. (Const. 1875, art. 12, sec. 4 : Schedule, sec. 1.)

*Appeal from DeKalb Circuit Court.*—HON. O. M. SPENCER, Judge.

AFFIRMED.

*Stephen S. Brown* for St. Joseph & Iowa Railroad Company, appellant.

It was proper for the St. Joseph & Iowa Railroad Company, in appropriating lands for its right of way, to proceed in the manner provided by its charter, which is a special proceeding before the judge, and does not admit of a jury. *Railroad v. Morton*, 20 Mo. 70; s. c., 27 Mo. 317; *Railroad v. Rowland*, 29 Mo. 337; *Lindell's Adm'r v. Railroad*, 36 Mo. 543; *Railroad v. Gott*, 25 Mo. 540; Lewis on Eminent Domain, sec. 248; *Corey v. Railroad*, 100 Mo. 282. And the provisions of the charter, with respect to such proceedings, were neither repealed nor modified by the constitution of 1875. *Haeussler v. Greer*, 78 Mo. 188; Const. of Mo., art. 12, secs. 4, 21; Laws of Mo., 1873, p. 24; Cooley on Const. Lim. [4 Ed.] 185; [1 Ed.] 152; Lewis on Eminent Domain, sec. 248; *State v. Clark*, 25 N. J. L. 54; *State v. Trenton*, 36 N. J. L. 189; *St. Louis v. Alexander*, 23 Mo. 483; *Peters v. Renick*, 37 Mo. 597; *Vastine v. Court*, 38 Mo. 529; *State ex rel. v. Macon Co.*, 41 Mo. 453; *St. Louis v. Ins. Co.*, 47 Mo. 146; *Railroad v. Cass Co.*, 53 Mo. 17; *Smith v. Clark Co.*, 54 Mo. 58; *Scotland Co. v. Railroad*, 65 Mo. 123; *Railroad v. St. Louis*, 66 Mo. 228; *State v. Green*, 87 Mo. 583; *Ottawa v. La Salle*, 12 Ill. 340; Laws of Mo. 1853, sec. 4, p. 322.

*S. H. Corn* for Shambaugh, respondent.

(1) After overruling defendant's exceptions to the viewers' report, it was not error for the court to hold that the amount of compensation to be paid defendant for the appropriation of his land must be ascertained by a jury. Const. of Mo., art. 12 sec. 4; *Railroad v. Story*, 96 Mo. 611. (2) Sections 8, 9 and 10 of the act entitled

The St. Joseph & Iowa Ry. Co. v. Shambaugh.

an " Act to incorporate the Louisiana & Columbia Rail-
road Company," approved January 27, 1837, being
inconsistent with section 4 of article 12 of the constitu-
tion, were rendered inoperative by that instrument.
Const. 1875, schedule, sec. 1; Cooley's Const. Lim. [5 Ed.]
46 ; Smith's Const. Con. (1848), secs. 398, 399, pp. 570-1 ;
*Ex parte Marmaduke*, 91 Mo. 265, and citations; *State
ex rel. v. Straat*, 41 Mo. 58; *Railroad v. County Court*,
39 Mo. 485; *Bank v. Anderson*, 1 Mo. 244 ; *Drehman
v. Stifel*, 41 Mo. 144 ; *State to use v. Gatzweiler*, 49 Mo.
17. (3) The mode of procedure for the enforcement of
rights and prevention of wrong is always within the
control of the state and may be changed at any time.
*State v. Railroad*, 60 Mo. 143 ; *State ex rel. v. Garroutte*,
67 Mo. 445 ; *State v. Roller*, 77 Mo. 120, cases cited, p.
129 ; *Ins. Co. v. Hill*, 86 Mo. 466, cases cited, p. 472 ;
*State ex rel. v. Hager*, 91 Mo. 452, cases cited, p. 456 ;
*University v. Rowse*, 42 Mo. 308 ; *Price v. Ins. Co.*, 3
Mo. App. 262 ; *State v. Mathews*, 44 Mo. 523 ; *State v.
King*, 44 Mo. 283.

*S. H. Corn* for Shambaugh, appellant.

(1) The plaintiff never had any existence as a cor-
poration. *City of Hopkins v. Railroad*, 79 Mo. 100 ;
*Butler v. Robinson*, 75 Mo. 192 ; *Railroad v. Sullivant*,
5 Ohio St. 276 ; *Richardson v. Pitts*, 71 Mo. 128 ;
*Mining Co. v. Richards*, 95 Mo. 110 ; *Glenn v. Berg-
man*, 20 Mo. App. 346 ; *Railroad v. Young*, 96 Mo. 41,
and cases cited ; *Gray v. Bank*, 3 Mass. 364 ; *Burt v.
Farrar*, 24 Barb. 518 ; *Railroad v. Preston*, 35 Iowa,
115 ; *Railroad v. Hines*, 8 Cush. 110 ; *Mining Co. v.
Woodbury*, 14 Col. 424 ; *Hunt v. Salisbury*, 55 Mo. 310 ;
*Harris v. McGregor*, 29 Cal. 125. (2) The act of
March 19, 1866 (Sess. Acts, 1865-6, p. 222), is not such a
recognition of the existence of the St. Joseph & Iowa
Railroad Company as a corporation, as will dispense
with proof of compliance with the things made by the

act of 1857 conditions precedent to its organic existence and the vesting of the corporate franchises therein enumerated. 1 Redf. on Railways [4 Ed.] sec. 18, p. 67 ; 1 Wood on Ry. Law, p. 22, sec. 11, and cases cited under note 1, p. 23 ; 31 Barb. 258. (3) The act of March 19, 1866, never became operative. *State v. Dawson*, 16 Ind. 40 ; *Bridge Co. v. Bridge Co.*, 7 Pick. 344 ; *Owen v. Railroad*, 83 Mo. 460. (4) If it be held, however, that the plaintiff had legal corporate existence at the time these proceedings were begun, its 'power to take land for the use of its road had ceased to exist before the beginning of these proceedings (*Peavy v. Railroad*, 30 Me. 498 ; *Railroad v. Railroad*, 31 N. J. 207 ; *Railroad v. St. Louis*, 66 Mo. 250), and the legislature could not restore its powers. Const. 1865, art. 8, sec. 2 ; *Ellis v. Railroad*, 51 Mo. 200 ; *Cunningham v. Railroad*, 61 Mo. 33 ; *St. Louis v. Franks*, 78 Mo. 41 ; *St. Louis v. Gleason*, 93 Mo. 33 ; *Railroad v. Young*, 96 Mo. 41. (5) These proceedings are void because they were not in conformity with article 6, chapter 21, Revised Statutes, 1879. *State ex rel. v. Railroad*, 62 Mo. 143 ; *Railroad v. University*, 52 Wis. 537 ; *Porter v. Mariner*, 50 Mo. 364 ; *Ins. Co. v. Hill*, 86 Mo. 472, and cases cited. (6) The land was taken without due process of law. No notice was given the land-owner of the time and place, when and where the petition would be heard. Without such notice the whole proceedings are void. *Boonville v. Omrod's Adm'r*, 26 Mo. 193 ; *Moses v. Dock Co.*, 84 Mo. 242 ; *Rutherford's Case*, 72 Pa. 82 ; *Railroad v. Commissioners*, 51 Me. 36 ; *Harris v. Hardman*, 14 Howard, 340 ; *Bostwick v. Isbell*, 41 Conn. 305. (7) The court erred in giving instruction, numbered 1, for the plaintiff. The opening of gates or bars at farm crossings is an element of damage which the jury ought to consider. Mills on Em. Domain, secs. 166, 189 ; *Railroad v. Story*, 96 Mo. 622 ; *Railroad v. Doran*, 17 Minn. 188 ; 2 Wood on Railway Law, 919.

*Brown & Craig* for St. Joseph & Iowa Railroad Company, respondent.

(1)   The legal existence of the St. Joseph & Iowa Railroad Company has been established in this case as fully as the corporation or its officers and directors would be required to establish it if called upon by the state to show by what warrant they exercised its corporate franchises.   *First.*   In such a case it is only necessary for the company or persons charged with the illegal exercise of corporate franchises to show the commencement of a legal existence under a valid charter, and from this the law will presume their continued existence down to the filing of the information.   For this purpose the legislative act of incorporation is sufficient.   *Attorney General v. Bank*, 2 Doug. 358.   So that, when the St. Joseph & Iowa Railroad Company is found exercising the franchises granted by the act of 1857, the courts will presume that its corporate existence began with the passage of that act and has continued uninterruptedly ever since.   *Second.*   The constitution of 1865 does not restrict or limit the power of the legislature to amend the charters of existing corporations of this character.   It only forbids the creation of such corporations by special acts.   Constitution of Missouri, 1865, art. 8, secs. 1, 2, 4; *State ex rel. v. Railroad*, 48 Mo. 468; *State ex rel. v. Coffee*, 59 Mo. 59.   *Third.*   "No court is authorized to declare an act of the legislature void without being able to point out some specific clause of the constitution to which it is repugnant."   *Court v. Griswold*, 58 Mo. 175; *Hamilton v. County Court*, 15 Mo. 3.   *Fourth.*   The constitution of 1865 does not prohibit the legislature from amending by special enactments the special charters of corporations already in existence.   "No rule of construction is better established, both as principle and authority, than that acts of the legislature are presumed to be constitutional, until the contrary is clearly shown."   *State ex rel. v. Pond*, 93 Mo. 606; *Kelly v.*

*Meeks,* 87 Mo. 396; *State ex rel. v. Laughlin,* 75 Mo. 148; *State v. Able,* 65 Mo. 362; *Stevens v. Bank,* 43 Mo. 385; *State ex rel. v. Railroad,* 48 Mo. 468; *Court v. Griswold,* 58 Mo. 175. And the court will, in every instance, regard the act to be investigated as *prima facie* constitutional. *State v. Addington,* 77 Mo. 110, 117. "If evidence was required, it must be supposed that it was before the legislature when the act was passed." Cooley, Const. Lim. [ 4 Ed. ] p. 225; *Lusher v. Scites,* 4. W. Va. 11; *DeCamp v. Eveland,* 19 Barb. 81; *Rumsey v. People,* 19 N. Y. 41. (2) "In proceedings where the question, whether a corporation exists or not, arises collaterally, the courts will not permit its corporate character to be questioned. If it appear to be acting under color of law, and recognized by the state as such, such a question should be raised by the state itself by *quo warranto* or other direct proceeding. And the rule would not be different if the constitution itself prescribed the manner of incorporation." *St. Louis v. Shields,* 62 Mo. 247; *Church v. Tobbein,* 82 Mo. 418; *Railroad v. St. Louis,* 66 Mo. 228; Cooley's Const. Lim. [ 4 Ed. ] 312; [ 1 Ed. ] 254; *Church v. Pickett,* 19 N. Y. 482. And this rule applies to proceedings for the condemnation of lands for railroad and other public purposes. *Dock Co. v. Railroad,* 32 N. J. Eq. 755; *Reisner v. Strong,* 24 Kas. 410; *Brown v. Railroad,* 125 Ill. 600; *Henry v. Railroad,* 121 Ill. 264; *Attorney General v. Stevens,* 1 N. J. Eq. 369; *Ward v. Railroad,* 119 Ill. 287. (3) Notice to the land-owner of the time and place of making application to the judge for the appointment of viewers was not required.

BLACK, J.—The plaintiff railroad company commenced this proceeding on August 5, 1885, to condemn property for a right of way. The circuit judge by a vacation order appointed viewers to assess damages, no notice of the application having been given. The viewers, however, gave defendant notice of the time

when they would view the property and make the assessment. To their report the defendant filed exceptions which the court overruled. The court, however, ordered a jury to reassess the damages. From the verdict of the jury and judgment thereon both parties appealed. The two appeals are docketed as two causes, but we shall treat them as one.

1. Under the provisions of the plaintiff's charter and the special acts therein referred to and made a part thereof, notice to the property-owner of the intended application to the judge for the appointment of viewers is not required. The charter, however, does require the viewers to give the land-owner notice of the time when they will view the property and assess the damages. This notice was duly given, and the notice thus given is sufficient.

2. Most of the other objections made by the defendant resolve themselves into these propositions: *First.* that plaintiff has no corporate capacity, *second,* if it has, then it has no power to condemn property for a right of way.

To understand these objections it is necessary to refer to some of the provisions of the plaintiff's charter and the act amendatory thereof. The act of January 22, 1857, provides: "Sec. 1. A company is hereby incorporated, called the ' St. Joseph & Iowa Railroad Company,' and by the same title the stockholders shall be in perpetual succession, with a capital stock of $2,000,000, which may be increased to the sum of $5,000,000, if deemed necessary, the same to be divided into shares of $100 each, etc.

"Sec. 2. John Corby" and other designated persons or any nine of them "shall constitute the first board of directors under the provisions of this act, and shall hold their offices until their successors shall be qualified. They shall meet at such times and places as shall be designated by any three of them, and organize.

They shall cause books to be opened for the subscription of capital stock of said company, at such times and places as they may designate under the supervision of such persons as they may appoint, and may continue them open so long as they may deem proper and may reopen such books when necessary, until the whole stock shall be subscribed."

"Sec. 4. The company shall commence the construction of said road within eight years and shall complete the same within sixteen years thereafter."

The following are the material portions of the act of March 19, 1866: "Whereas, the board of directors of the St. Joseph & Iowa Railway Company, organized as provided by the charter of said company, opened books for subscription to the capital stock of said company, made surveys for said road and commenced the transaction of its business, but were prevented (the rebellion intervening) from completing said road as required by the terms of said charter; and whereas, the majority of said board of directors having failed to take the oath of loyalty, as required by the constitution and laws of the state of Missouri, therefore, to secure the completion of said road. * * *

"Sec. 1. The charter of the St. Joseph & Iowa Railroad Company, approved January 22, 1857, be and the same is hereby amended as follows: That John Severance, Francis Rodman, * * * shall constitute the board of directors of said company; they shall hold their offices until their successors are qualified, and they shall determine by by-laws what number of directors shall constitute a quorum. The rights, privileges and immunities that belong to or are vested in the board of directors by virtue of the act to which this act is amendatory, not inconsistent with this act, together with the property rights and credits of said corporation created by said act, shall be vested in and shall belong to the board herein named and their successors in office, and they shall have full power to hold the books and papers

of such corporation." "Sec. 4. Said company shall proceed with the construction of said road within ten years after the approval of this act, and shall complete the same within twenty years thereafter." Other sections of this act give the new board power to levy assessments upon stock previously issued and to forfeit the same for non-payment and repeal section 4 of the act of 1857.

The evidence of a witness introduced by defendant shows that, in 1871, the company had made a survey and done some work in Buchanan county and had portions of its road in operation in other counties. This witness became a member of the board of directors in 1878, and says he had no personal knowledge of any organization of the company prior to the act of 1860, and did not know of any outstanding stock issued prior to the date of the amendatory act.

The corporate existence of the plaintiff is an issue which may be made in a proceeding to condemn property; for if the plaintiff has no corporate capacity it has no right to prosecute this suit. *City of Hopkins v. Railroad*, 79 Mo. 100; *Matter of Railroad*, 72 N. Y. 245. Where the act of incorporation does not in and of itself confer corporate capacity, but provides for the doing of certain things, upon the doing of which the company shall become a body corporate, the performance of these things constitutes conditions precedent, and until performed the company has no corporate existence. *Granby Mining Co. v. Richards*, 95 Mo. 110; *Hammett v. Railroad*, 20 Ark. 204; *Lyons v. Railroad*, 32 Md. 18. If, however, the charter confers corporate capacity without any conditions precedent, acceptance of the charter is all that need be shown. In such cases the act of incorporation brings the corporate body into existence. The act of January 22, 1857, declares that there is hereby incorporated a company called the St. Joseph & Iowa Railroad Company with a

capital stock of $2,000,000, and then goes on to designate the persons who shall constitute the first board of directors. No conditions precedent are prescribed. It is a present grant of corporate powers. The corporation came into being upon the acceptance of the charter. It is true the act provides that the directors shall meet and organize, that is to say, organize as a board of directors, and shall open books for subscriptions to the stock ; but the performance of these things is not made a condition precedent to corporate life. They are but powers to be exercised by the corporation. And the further provision as to the time within which the company shall commence and complete the road is simply a limitation upon powers before granted.

Now, so far as acceptance of the charter is concerned, it is to be observed that the charter prescribes no mode or time of acceptance. Under these circumstances, proof that the act was passed at the request of the designated directors would show a sufficient acceptance. No mode of acceptance being designated, acceptance may be inferred from use of corporate powers under the charter. *Hope Mut. Fire Ins. Co. v. Beckmann*, 47 Mo. 93 ; 1 Morawetz on Pri. Corp., sec. 23; 1 Wood, Railway Law, sec. 10. The evidence shows that plaintiff had constructed and in operation part of its road in 1871, and this is sufficient evidence of the acceptance of the charter, and that, too, without any regard to the act of 1866.

3. This act of March 19, 1866, becomes important in view of the fact that this proceeding was not commenced within the time limited for the completion of the road by the original act, and the validity of the act of 1866 is assailed by plaintiff on the ground that it violates section 2 of article 8 of the constitution of 1865, which provides : "No law shall be passed, reviving or re-enacting any act heretofore passed, creating any private corporation, where such corporation shall

not have been organized, and commenced the transaction of its business within one year from the time such act took effect, or within such other time as may have been prescribed in such act for such organization and commencement of business."

The act of 1866 professes to be and is amendatory in several respects. But the claim of the defendant seems to be that it is also in substance and effect a reviving act. The above constitutional provision is not absolute, that is to say, it does prohibit the legislature from enacting laws reviving prior acts creating private corporations in all cases. The power to enact such laws remains in the legislature, except in the specified cases. Now the act in question does not on its face show that it comes within the prohibited cases. On its face it is a valid law. The principle of law is too well settled to call forth citation of authorities, that an act of the legislature will be presumed to be constitutional until its unconstitutionality is made to appear. There is nothing in this record to show that this act falls within the prohibited cases. In the first place the prohibition against reviving charters implies that the charter to be revived is lifeless. On this record the company was an existing one with perpetual succession at the date of the alleged reviving act, Again, there is nothing to show that the company was not organized and did not commence business within the time specified in the above section of the constitution. Assuming that the act of 1866 can be called a reviving law, still it is valid on its face, and the presumption of its validity must prevail, for there is nothing shown to disclose its invalidity.

The plaintiff corporation contends that the facts set forth in the preamble could not be contradicted for the purpose of showing the unconstitutionality of the act, but upon this question we express no opinion. With or without the preamble the act is *prima facie*

valid, and that is enough to know for all the purposes of these appeals.

4. While the constitution of 1865 prohibited the creation of private corporations by special laws, and contained other restrictions against special legislation, still it was held by this court that the legislature could, by a special act, amend special charters previously enacted. *State ex rel. Circuit Attorney v. Railroad*, 48 Mo. 468. The act of 1866 is, therefore, valid as an amendment of the act of 1857. As this proceeding was commenced within the time limited for the construction of the road by the amending act, the contention that the company had no power to condemn property for a right of way when this suit was commenced must be, and is, overruled.

5. As the duty of building fences and constructing gates and farm crossings is by statute devolved upon the railroad company, the cost of such structures is not an element of damage in favor of the land-owner; and the court committed no error in so instructing the jury. *Railroad v. Baker*, 102 Mo. 554. The inconvenience in going from one to another part of the farm, arising from the road, fences and gates, is, of course, a proper element of damages. The instructions given, instead of excluding this element, required the jury to consider all such matters in fixing the amount of damages.

6. This brings us to the consideration of the single objection presented by the plaintiff's appeal, and that is this, that the court erred in calling a jury to reassess the compensation to be paid by the railroad company. According to the plaintiff's charter it is the duty of the judge, if objections to the reviewers' report are sustained, to "order a review by three other reviewers, who shall proceed in the same manner as is hereinbefore provided." The charter, as has been said, was enacted in 1857. Section 4 of article 12 of the constitution of 1875 ordains that "the right of trial by jury shall be held inviolate in all trials of claims for compensation,"

where an incorporated company shall seek to exercise the right of eminent domain; and the first section of the schedule declares that "the provisions of all laws which are inconsistent with this constitution shall cease, upon its adoption, except that all laws which are inconsistent with such provisions of this constitution, as require legislation to enforce them, shall remain in force until," etc.

The railroad company insists that the words, "shall be held inviolate," show an intention to preserve a jury trial in those cases, and those only where one was provided for at the time the constitution was adopted; and, further, that the general language of said section 4 of article 12 does not repeal special laws.

The amendment of 1873 ( Acts of 1873, p. 24 ) to the general law allowed a jury trial to either party when the report of the commissioners should be set aside for good cause shown. It was only in the event that the report should be set aside for cause that the parties were entitled to a jury. By the constitution either party is entitled to a jury as a matter of right. This we have held in the case of *Chicago & Santa Fe Ry. Co. v. Miller, ante,* p. 458. This being so, it is clear that the constitution does more than guarantee their existing statutory rights.

The remaining question is, whether the section of the constitution and the repealing clause of the schedule repeal these existing special charter provisions which provide for a reassessment of damages by viewers or commissioners. It is a rule often asserted and applied that a mere general affirmative statute does not repeal a former special one, unless negative words are used, or unless the two acts are irreconcilably inconsistent. *Manker v. Faulhaber,* 94 Mo. 430, and cases cited. But to accomplish a repeal it is not necessary that the subsequent general law use express words of repeal. Any form of expression showing a clear intention to repeal former special laws will be sufficient.

Sedg. on Const. of Stat. & Const. Law [ 2 Ed.] 98, note. Here the framers of the constitution were aware that the declaration in the bill of rights concerning the right to a jury trial would not guarantee such a trial in these proceedings to condemn property for public use, and hence they dealt with that subject specially. The section secures the right to a jury in these cases by the assertion of a uniform rule. Looking to the subject-matter and the form of the expression, there is no room for any exception. That it was competent for the people by their constitution, or even through the legislature, to thus change the method of assessing the damages is not questioned in this case, nor could the right be successfully denied; for the change goes to the remedy only, and interferes with no contract or vested rights. These considerations taken in connection with the repealing clause of the schedule are sufficient to show that the constitution does by its own operation repeal all existing laws, whether general or special, so far as they deny a jury trial in these proceedings to condemn property for public use. The constitutional provision in question inserts itself into the laws, and must be taken as a part thereof. This is the conclusion reached in the recent case of *Railroad v. Cudmore*, 103 Mo. 634, and to that ruling we adhere. The judgment is affirmed. All concur.