John H. MacDonald *vs.* New York, New Haven & Hart-ford R. R. Company.

WASHINGTON—FEBRUARY 5, 1902.

Present : Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Railroads. Statutes. Amendments. Accepting Amendments. Injuries by Fires. Damages.*

The New York, Providence & Boston R. R. Co. was chartered under the laws of this State by an act passed at the June session of the General Assembly, 1832. The charter was amended at the June session in 1836 in part as follows :

"Section 2. Said corporation shall be liable to pay to the owner or owners, for all damages which may arise from the burning of houses, wood, hay or any other substance whatever, by fire communicated from the engines, cars or other vehicles of said corporation, damages equal to the value thereof, with all the lawful costs, to be recovered in an action of debt in any court competent to try the same."

The amendatory act also contained certain provisions necessary for securing to the corporation the privileges and immunities formerly granted them by their charter, and provided also that the company should within a prescribed time signify in writing their assent to the requirements and provisions of the amendatory act. This was not done in terms, but the company availed itself of the provisions in the amendment beneficial to itself :—

*Held*, that the company by availing itself of the benefits conferred by one section was equally bound by the obligations of the other sections, since it could not accept the amendment in part and reject it in part.

*Held*, further, that the words "owner or owners," as used in the amendment, referred not alone to those whose land was bisected by the railroad bed, but applied also to those whose land was sufficiently near to the roadbed to have their land damaged by fire communicated from the engines of the railroad company.

(2) *Railroads. Merger. Assumption of Obligations. Construction of Statutes.*

The New York, Providence & Boston R. R. Co., a corporation of Rhode Island, was empowered to make a lease of its railroad property and franchises to the New York, New Haven & Hartford R. R. Co., a corporation existing under the laws of Massachusetts and Connecticut, and the latter was empowered to accept said lease ; but the lessee was to succeed to all the rights, privileges, and powers of the lessor, and be subject to the duties and liabilities imposed upon the same by its charter and the amendments thereto and the general laws of Rhode Island. At the January session, 1893, an act was passed whereby the stockholders of the New York, New Haven & Hartford R. R. Co., a corporation under the laws of Massachusetts and Connecticut, were made a corporation under that name in Rhode Island, with the powers, privileges, and franchises given that corporation by its charter not inconsistent with the laws of this State, and with the rights and subject to the liabilities imposed upon railroad corporations by the laws of this State. The general laws of Rhode Island contained no provision in regard to fires set by locomotives, as did the public laws of Massachusetts and Connecticut, but section 5 of the charter provided that like proceedings should be had in regard to the condemnation of and compensation for land taken as was provided for taking land by the charter of the New York, Providence & Boston R. R. Co. and the acts in amendment of and in addition thereto :—

*Held,* that while the charter granted by this State to the New York, New Haven & Hartford R. R. Co. did not refer in terms to the obligations and liabilities imposed by the charter of the New York, Providence & Boston R. R. Co., yet the pending legislation in this State as to the lease looking to the consolidation of the two companies, and the provisions in the amendment of 1889 of the Connecticut and Massachusetts charters that upon the retirement of the stock of a leased line all of the latter's obligations should remain upon the New York, New Haven & Hartford R. R. Co., indicated that the intent of the Rhode Island charter was to allow the consolidation, but with the same obligations and privileges as had existed before.

*Held,* further, that section 2 of the amendment of 1836 of the charter of the New York, Providence & Boston R. R. Co. was not repealed by the charter, but was an existing duty, transferred to and binding upon the New York, New Haven & Hartford R. R. Co.

*Held,* further, that the liability under section 2 was not dependent upon the fire having been communicated by negligence on defendant's part, and hence no allegation of negligence in the declaration was necessary, the case not being within the rule laid down in *Smith* v. *R. R. Co.,* 10 R. I. 22.

(3) *Procedure. Power of Legislature to Regulate.*

It is within the province of the legislature to establish the form of action for the recovery of damages in a given case ; and while that form may

not be so well adapted to the purpose as others, it is not ground for demurrer.

(4) *Construction of Statutes.   Preamble.*

In construing an act of the legislature the court will look at the language of the preamble in connection with the body of the act to arrive at an interpretation of the act.

DEBT under a statute.   The facts are stated in full· in the opinion.   Heard on demurrer to declaration, and demurrer overruled.

ROGERS, J.   This case is before us upon the defendant's demurrer to the plaintiff's declaration in an action of debt brought under a special act passed June 25, 1836, for the recovery of damages occasioned by the defendant's locomotive setting fire to the plaintiff's property adjacent or near to the defendant's railroad track.

The declaration sets out that the defendant is a duly chartered railroad corporation under the laws of Rhode Island, now using and operating the railroad bed, rights of way and franchises for railroad purposes, which formerly belonged to and were operated by the New York, Providence & Boston R. R. Co., which also was a duly chartered corporation under the laws of this State, by an act passed at the June session of the General Assembly, in 1832 ; that the charter of said last-mentioned railroad company was amended at the June session of the General Assembly in 1836, so as to read, in part, as follows :—

"SEC. 2.   And be it further enacted that said corporation shall be liable to pay to the owner or owners for all damages which may arise from the burning of houses, wood, hay, or any other substance whatever, by fire communicated from the engines, cars or other vehicles of said corporation, or by those in their employ, damages equal to the value thereof, with all the lawful costs ; to be recovered in an action of debt, in any court competent to try the same."

The declaration sets out, step by step, how the defendant became liable for the duties and obligations imposed upon the New York, Providence & Boston R. R. Co. by the charter of

the latter and the amendments thereof; that on May 4, 1901, certain land of the plaintiff with certain property thereon, situated in Charlestown, in the county of Washington, and described therein, was greatly injured and damaged by fire communicated to said land by a locomotive of the defendant passing over its railroad track, to the cause of which injury the plaintiff in no wise contributed nor was to blame.

To this declaration the defendant demurred, because.

1st.   It does not appear from the said declaration that plaintiff's alleged cause of action is in debt, but, upon the facts therein stated, said declaration should have been brought in trespass or in trespass on the case.

2nd.   It does not appear that the burning and damage complained of were due to or resulted from any willful or negligent act or omission of the defendant.

Inasmuch as we consider it to be well settled in this State by *Smith* v. *Old Colony & Newport R. R. Co.*, 10 R. I. 22, 26, decided in 1871, that a railroad company, in the absence of legislative authority to the contrary, is only required to use reasonable or ordinary care, to protect property on the line of its road from damage by reason of sparks escaping from its locomotives; and that reasonable care is such care as prudent men, skilled in the business, would ordinarily exercise in the circumstances, the plaintiff can only recover under some special provision dispensing with the allegation that the defendant was guilty of negligence in the premises.   The provision relied on is the amendment of 1836 to the charter of the New York, Providence & Boston R. R. Co., the predecessor of the defendant in its corporate franchises.

The New York, Providence & Boston R. R. Co. was chartered in Rhode Island June 23, 1832 (R. I. Acts and Res. June, 1832, p. 67), but its act of incorporation reserved no power to the General Assembly to alter or amend it, and it was not until 1844 that the general law providing that "all acts of incorporation, hereafter granted, may be amended or repealed at the will of the General Assembly, unless express provision be made to the contrary," went into operation. Pub. Laws R. I. Rev. of 1844, p. 65.

It is not alleged in direct terms in the declaration that said amendment of the New York, Providence & Boston R. R. Co.'s charter was accepted by said last-mentioned railroad company, or by its successor, the defendant corporation; and inasmuch as it is settled that the rights legally vested in a corporation cannot be controlled or destroyed, without its own consent, by any subsequent statute, unless a power for that purpose be reserved to the legislature in the act of incorporation or by the general law, the question whether said amendment has been accepted by said New York, Providence & Boston R. R. Co. becomes of cardinal importance in this case. *Trustees of Dartmouth College* v. *Woodward*, 4 Wheat. 518; *State* v. *Brown & Sharpe Mfg. Co.*, 18 R. I. 16, 23, *et seq.*; *Gardner* v. *Hope Ins. Co.*, 9 R. I. 194.

Though the declaration does not allege in terms that the amendment of 1836 was accepted by the New York, Providence & Boston R. R. Co., yet it sets forth facts intended as the equivalent of such a statement, by showing that the said railroad company in fact availed itself of certain privileges granted in said amendment, which operated in law as an acceptance of the whole amendment. Section 13 of the charter of said railroad company, R. I. Acts and Res. June Sess. 1832, p. 67, reads as follows:

"Sec. 13. And be it further enacted, that if the stock shall not have been subscribed for, the company organized, and location of the route filed with the court of common pleas of the county or counties, within which the land proposed to be taken up for the use of said railroad is situate, previous to the tenth day of April, A. D. 1835, or if the stock being so subscribed, the company organized, and location made, as aforesaid, the corporation fail to complete the said railroad before the tenth day of April, A. D. 1840, in either of the before-mentioned cases, this act shall be void, and of no effect."

After the said 10th day of April, 1835, to wit, on June 23, 1836, the General Assembly passed the said amendment, which contained this significant preamble, viz.: "Whereas it appears that some legislative enactments are indispensably

necessary for the securing to said corporation the privileges and immunities formerly granted them, and the rights and privileges of the citizens of the State, through whose lands said railroad is intended to pass—" and then followed the amendment.

It is plain that two purposes were to be subserved by the amendment—one for the benefit of the railroad company, "indispensably necessary for the securing to said corporation the privileges and immunities formerly granted them," and the other, not so desirable for the corporation but "indispensably necessary for the securing . . . the rights and privileges of the citizens of the state, through whose lands said railroad is intended to pass." The latter was clearly an offset to the former, so to speak, and inasmuch as the railroad company desired legislative enactments indispensably necessary for it, and, further, inasmuch as it could not be forced by the General Assembly to make undesired concessions, save by its own assent, the General Assembly included in one and the same act not only the amendment the railroad company desired and was so indispensably necessary for it, but also amendments it probably would not desire but which the General Assembly wished it to accept for the benefit of the citizens of the State, by which means the railroad company would be induced, if not, indeed, absolutely forced by its indispensable necessities to accept the amendment, for an acceptance of a part was an acceptance of the whole, as it could not accept a part and reject a part.

Section 1 of the amendment of 1836 provided "that in all cases where said railroad corporation shall not have otherwise agreed with the owner or owners of the land through which said railroad is intended to pass, the said corporation shall be obliged to erect and to forever maintain good, sufficient and lawful fences on both sides of said road, and suitable, convenient and proper gates at each and every private pass, or driftway, over which said road shall pass," etc.

Section 2 of said amendment relating to fires has already been quoted in full.

Said sections 1 and 2, and perhaps, some others, clearly be-

longed to the class of enactments referred to in the preamble as necessary to secure the rights and privileges of the citizens of the State.

Section 10 of the amendment reads as follows :

"Sec. 10.   And be it further enacted, that if the said corporation shall or may deem it necessary to re-locate all or any part of said road, then, the said corporation are hereby au-- thorized to file such re-location of the route of said road with the court of common pleas of the county or counties within which the land proposed to be taken up for the use of said road is situated, at any time prior to the first day of January, 1837 ; which re-location if made and filed in conformity to the provisions of said act on or before the first day of January, 1837, shall be as effectual to all intents and purposes, as if the same had been made and filed with said court of common pleas, previous to the tenth day of April, 1835 ; provided, however, that nothing in this section contained, shall be construed to authorize said corporation to locate any of the lateral branches of said road to any of the waters of Narragansett Bay, or to any factories or villages ; and provided also, that the said corporation shall, within ninety days from the rising of this general assembly signify in writing to the secretary of this state, their assent to the requirements and provisions of this act."

Section 10 indubitably belonged to the class of enactments referred to in the preamble, as "indispensably necessary for the securing to said corporation the privileges and immunities formerly granted them."

The hinge upon which this part of the case turns, is the question whether the New York, Providence & Boston R. R. Co. is bound by the provisions of section 2 of the amendment of 1836 to its charter.   There is no direct proof that that amendment was ever accepted in writing filed in the secretary of State's office within the time required in section 10 of said amendment.   It is admitted, however, since a demurrer admits the truth of all statements well pleaded, that said railroad company relocated its road, or a part thereof, under the provisions of section 10 of said amendment, in October,

1836, and thereby availed itself of a provision therein highly beneficial to itself ; but its successor, the defendant corporation, denies that it is bound by the provisions of section 2 of said amendment.

If the New York, Providence & Boston R. R. Co. can lawfully avail itself of the benefits conferred by one section, it is equally bound by the requirements and obligations of the other sections.   It cannot accept the amendment in part and reject it in part.   Lord Tenterden, C. J. thus states the law in the House of Lords, in *The King* v. *Westwood*, 7 Bing. 1, 92, viz. :—"Two questions of law, therefore, have arisen upon this record ; the first, whether it is competent to an existing corporation, to whom a charter of the crown is offered, to accept that charter in part and reject it in part ; or if it accept it in part, whether that must not be taken to be an acceptance of the whole ?   Upon that point there never has been any difference of opinion among the learned judges.   There are, indeed, to be found some expressions of judges in former times importing that a corporation might accept part of a charter and reject the remainder ; but of late times all judges have been of opinion that that is not open to a corporation ; otherwise a corporation might reject the obligation which was imposed, and accept the benefit which was conferred upon them."

In *Lyons* v. *Orange C. R. R. Co.*, 32 Md. 18, 29, the court said :   "As a general rule it is true that, when a charter is granted, whether it be one of creation or an amendment to a preëxisting corporation, it must either be accepted or rejected as offered, and without condition ; and that in accepting the privileges conferred, the grantees will be required to perform the conditions imposed."

In *United States Bank* v. *Dandridge*, 12 Wheat. 64, 81, Story, J. said :   "There are many cases where an act is prescribed by law to be done, and record made thereof, and nevertheless, if left unrecorded, the act is valid.   ·   .   .   That some of the provisions of the charter and by-laws may well be deemed directory to the officers, and not conditions without which their acts would be utterly void, will scarcely be

disputed.    What are to be termed such provisions, must depend upon the sound construction of the nature and object of each regulation, and of public convenience, and apparent legislative intention.    If a regulation be merely directory, then any deviation from it, though it may subject the officers to responsibility both to the government and the stockholders, cannot be taken advantage of by third persons."

*Zabriskie* v. *Cleveland, &c. R. R. Co., et al.*, 23 How. 381, is very strongly in point.    In that case the legislature of Ohio had passed a general law relating to railroad companies empowering them at any time by means of their subscription to any other company, or otherwise, to aid such company for the purpose of forming a connection with the road aided, "Provided that no such aid should be furnished nor any arrangements perfected until a meeting of the stockholders of each of said companies should have been called by the directors  .  . and the holders of at least two-thirds of the stock of such company represented at such meeting in person or by proxy, and voting thereat, should have assented thereto."    By an amendatory act all companies then incorporated in said State of Ohio, and actually doing business, might accept any of the provisions of said act, and when so accepted and a certified copy of their acceptance filed with the Secretary of State, that portion of their charters inconsistent with the provisions of said act was thereby repealed.    The defendant corporation in that case which had been incorporated previous to the passage of the act had endorsed bonds in aid of another railroad company under the provisions of the act, but when it so endorsed, it had not formally complied with either of the before mentioned requirements, as it had neither convoked a meeting of the stockholders, nor signified its acceptance to the secretary of State.    The plaintiff in that suit, a stockholder in the defendant corporation, had brought a bill to restrain it from paying any money to become due on bonds endorsed by it, on the ground that said act had not been accepted by the said railroad company, and that it could be accepted and become obligatory upon the company only in the mode prescribed in the act.    The defendants other than the railroad company had obtained leave to

become parties to the suit as defendants upon the allegation that each of them was the holder of bonds which had been thus endorsed.   Campbell, J. (p. 396), *inter alia,* said : " Both of these are general acts, and were designed to enlarge the faculties of these corporations, so as to promote their utility, and to enable them to accomplish with more convenience the objects of their incorporation. . . . As between the parties on this record, the acceptance of those acts may be inferred from the conduct of the corporators themselves.   The corporations have executed the powers and claimed the privileges conferred by them, and they cannot exonerate themselves from the responsibility, by asserting that they have not filed the evidence required by the statute to evince their decision. . . . The instances already cited of the course of dealing of this corporation, and others of a similar nature, of which there is evidence in the record, sufficiently attest that the corporation accepted the acts of 1851 and 1852 as valid grants of power ;  and it would be manifestly unjust to allow it to repudiate the contracts which it has made, because their acceptance of these grants has not been clothed in an authentic form."   The injunction was denied and the bill was dismissed. See also *Blandford* v. *Gibbs,* 2 Cush. 39 ;  *Middlesex Husbandmen, &c.,* v. *Davis,* 3 Metc. 133 ;  *The King* v. *Amery,* 1 Term. 575 ;  1 Morawetz on Corp. § 22 ;  7 A. & E. Enc. of L. 2nd ed. 660, and cases cited.

We are of the opinion that the allegations in the declaration relating to the acceptance of the amendment of 1836, sufficiently aver the acceptance of said amendment by the said New York, Providence & Boston R. R. Co.

It is claimed for the defendant that if the court should be of the opinion that the defendant is bound by said act, the same meaning and limitation should be given to the words " owner or owners " used in the second section, as is given to the same words as used in the first and third sections of said act ;  that under this construction the words " owner or owners " apply only to the owner or owners of land through which the road passes ;  that only such owners can bring an action of *debt* to recover damages for loss by fire, and .

all other persons must look to the common law for their remedy against the railroad company for loss occasioned by fire caused by the negligence of the railroad company ; that the declaration does not allege that the plaintiff is the owner of the land burned, but only that he "was seized and possessed, and the occupant of a certain farm," etc., that the defendant operated a "steam railroad running through said town of Charlestown, near to, or not far distant from, said farm of the plaintiff," that said locomotive "threw out sparks, fire and other combustibles upon the fields adjoining said railroad and upon the lands adjacent to the road bed along its right of way, and set fire to them ; and said fire communicating to the said premises of the plaintiff, burned over," etc., describing the damage done.

It seems to us this claim of the defendant is not well founded. The words *owner or owners* are in very common use, signifying proprietorship of that to which they are applied, and when used in the first section of said act they were used in this wise, viz.: "owner or owners of the land through which said railroad is intended to pass." The very purpose to be subserved occasioning their use,—fencing the railroad track and maintaining such fence with the necessary gates, shows clearly that the owners of land immediately adjoining the track only were intended. In section 3, however, in one place where the word *owners* is used, it applied to "*owners* of water privileges that may be affected by said road" etc. wherever situated. In section 2 the words *owner or owners* clearly apply, as it seems to us, to the owner or owners of "*houses, wood, hay, or any other substance whatever*" which may have suffered damage from the burning thereof "*by fire communicated from the engines, cars or other vehicles of said corporation*," etc. The land on which the damage by fire was done need not necessarily have been land immediately adjoining the railroad bed, though from the nature of the case it would not ordinarily be very far removed from the track, because the fire must have been communicated from the engines and it would be to the inter-

est of the company to prevent all fires in general, and extensive conflagrations in particular.

(4)    The preamble of the act stated one of the purposes of the act to be the securing "the rights and privileges of the citizens of the State, *through whose lands said railroad is intended to pass."*   Hornblower, C. J. in *James* v. *Dubois,* 16 N. J. L. 285, 294, says:—   "When a statute is in itself ambiguous and difficult of interpretation, the preamble may be resorted to; but not to create a doubt and uncertainty, which otherwise does not exist."   Lord Tenterden, C. J., in *Bywater* v. *Brandling* 7 B. & C. 643, 660, said:   "In construing acts of parliament we are to look not only at the language of the preamble, or of any particular clause, but at the language of the whole act.   And if we find in the preamble, or in any particular clause, an expression not so large and extensive in its import as those used in other parts of the act, and upon a view of the whole act we can collect, from the more large and extensive expressions used in other parts, the real intention of the legislature, it is our duty to give effect to the larger expressions, notwithstanding the phrases of less extensive import in the preamble, or in any particular clause."

Taking the whole act together, including the preamble, it seems to us the defendant's claim of its meaning is too narrow and contracted.   The words of the preamble did not mean that the lands affected by the act should necessarily be bisected by the railroad, but that the words *through whose lands said railroad is intended to pass,* were used in a larger sense, including not only land actually bisected by the railroad bed, but also land in the neighborhood, or vicinity, or adjacent or near to, near enough to be affected by the operation of the railroad company's engines, or upon, or along the railroad company's route, broadly construed.

The land actually taken was either bought or taken by eminent domain and paid for, but the purpose of the first three sections of the act was to impose upon the railroad company the duty of preventing damage being done by its acts, or, if damage was done, then to make it responsible for

such damage, whether such damage was negligently caused or not. If the railroad went across the corner of a large farm, then by the defendant's contention the owner might be entitled to recover for damage done by fire much farther away from the railroad than was the land of an owner close to the railroad but where land was not bisected thereby. The owner of a water privilege affected by said railroad was clearly within the scope of section 3, whether in the words of the preamble "he was a citizen of the state through whose lands said railroad was intended to pass" or not. It does not seem to us that the legislature intended to make two separate classes of claimants for damage done by fire by that railroad company, one class entitled to bring debt for such damage and not be obliged to show any negligence on the defendant's part, and another class suffering much greater damage, it may be, by the same fire, the bulk of whose land was much nearer to the railroad, though not bisected by it, that would be obliged to resort to trespass on the case for the damage done them, and show that the fire was set negligently.

A careful examination of section 2 of the amendment fails to afford any indication of the purpose of limiting its application to land of an owner actually bisected by a railroad track, that would not also apply to land not so bisected burned over by fire from a locomotive.

*Perley* v. *Eastern R. R. Co.*, 98 Mass. 414, was tort under the Massachusetts General Statutes, c. 63, § 101, for injury to the plaintiff's woodland, alleged to have been caused by fire communicated by the defendant's locomotive. That statute read as follows: "Every (railroad) corporation shall be responsible in damages to any person or corporation whose buildings or other property may be injured by fire communicated by its locomotive engines; and shall have an insurable interest in the property upon its route for which it shall be so held responsible, and may procure insurance thereon in its own behalf." The plaintiff owned a lot of woodland of thirty-five acres, lying substantially parallel with the defendant's branch railroad about half a mile distant from the track,

from which it was separated by intervening lots of various proprietors and by an old road. The defendant's locomotive set fire to stubble near the track and thence spread across the intervening owners' land, to the plaintiff's land and burned large quantities of wood. After verdict for the plaintiff and exceptions taken, the defendant petitioned for a new trial. The defendant's claims were that the injury was remotely and not proximately connected with the escape of fire from their engine, and that the land injured was not *upon* the route of the railroad within the meaning of the statute. The court, however, overruled all the exceptions, and Chapman, J. *inter alia* said; "But it" (the fire) "was none the less 'communicated' from the engine because the intermediate land belonged to other persons, nor because the distance was half a mile. If the land had all belonged to the plaintiff, and had extended a mile, it would be difficult to establish a line on his land and to hold that the statute gives him no remedy for the damage happening beyond that line. Nor does the fact that there were several owners make the damage to the plaintiff remote, in the sense in which the term is used as contra-distinguished from direct and immediate. . . . The liability of this railroad is not at common law, nor dependent upon the defendant's want of care. . . . The terms of the statute do not restrict the liability so as to exclude any cases where the fire is communicated from the engine, nor limit the insurable interest to any specific distance from the track."

In *Ross* v. *Boston & Worcester R. R. Co.*, 6 Allen, 87, it is said that the statute just referred to is remedial, and is not to be construed strictly, but fairly and liberally.

In *Hart, et al.* v. *Western R. R. Corp.*, 13 Metc. 99, 103, a case brought under the last-mentioned statute where the building burnt was near the route of the railway, the words of the statute being the same as in *Perley* v. *Eastern R. R. Co.*, *supra*, save that instead of the words *upon its route*, the statute then read, *along its route*, Shaw, C. J. used this language: "It is contended that the plaintiff's building was not burnt by fire communicated by a locomotive engine, within the mean-

ing of the statute.   And the case certainly presents a question of great importance, and of great difficulty.   On the other hand, if the word 'communicated' is used in the broad sense in which, without force or violence done to the language, it may be, to include all burnings, when a fire is communicated by the engine directly to one building, and thence by natural and ordinary means extending to others, without the intervention of any other means, the effect would be to charge the railroad company with damages to an unlimited amount, when a fire, thus originating in a village or city, has spread into a wide conflagration.   The argument is earnestly urged, that the legislature could not have intended to impose a responsibility so serious and alarming ; and it is insisted that the term 'communicated' will bear, and ought to bear, a construction more limited, so as to restrain the operation of the statute to the case where the very particles of fire which fall upon, and kindle the flame in, the building burnt, must have emanated from the engine itself, without the intervention of any other object.   If so restricted a sense as the latter had been intended by the legislature, it seems strange that they did not add some qualifying word as 'immediately' or 'directly,' to the word 'communicated.'   Perhaps some light may be derived from a subsequent clause in the same section of the statute which provides, that 'any railroad corporation shall have an insurable interest in the property for which it may be so held responsible, in damages, *along its route*, and may procure insurance *thereon* in its own behalf.'   These latter words, we think, describe buildings being near and adjacent to the route of the railroad, so as to be exposed to the danger of fire from engines, but without limiting or defining any distance.   In this view of the statute, it seems difficult to lay down any general rule.   From the language made use of, we cannot think it was intended to limit its operation to the very first building which might be touched with a spark or other fire from the engine, and not extend it to another building, contiguous though it may be, but belonging to another owner, which must necessarily burn with it.   In the present case, the fire was transmitted, by ordinary and natural means,

from the shop first touched by sparks from the engine, to the plaintiff's dwelling house, immediately across a street not very wide. The building burnt was, then, near the route of the railway." The court held that the defendant was liable.

As early as April 19, 1837, the legislature of Massachusetts passed a law making railroad corporations responsible in damages for all injuries caused by fire communicated by a locomotive engine, "unless the said corporation shall show that they have used all due caution and diligence, and employed suitable expedients to prevent such injury." This act, it will be observed, instead of obliging the plaintiff to prove the defendant guilty of negligence as a condition precedent of recovering, shifted the burden upon the defendant corporation to prove its freedom from such negligence. Laws, Mass. 1837, cap. 226, § 9, p. 256. March 23, 1840, that section was repealed and the provision as found in *Hart et al.* v. *Western R. R. Corp.*, *supra*, was enacted which is practically as the provision stands to-day. Acts & Res. Mass. 1840, cap. 85, p. 228. Rev. Laws, Mass. (1902), cap. 111, § 270, p. 1038.

Many other States from time to time have passed similar acts, either with or without the insurance clause, including Connecticut, which passed such an act in 1881. Conn. Ses. Laws of 1881, ch. 92, § 1. Mr. Justice Loomis, in *Grissell* v. *Housatonic R. R. Co.*, 54 Conn. 447, 461, in delivering the opinion of the court declaring said act to be constitutional, explains the principle upon which such acts are founded, in this wise, viz. : "If the statute should make the owner of a vicious domestic animal liable for the damage it might occasion, without proof of *scienter*, or knowledge of its vicious propensity, as required by the common law, we do not think the act would be void. Such a statute would only be a new application of an ancient common law principle, that where one of two innocent persons must suffer loss from an act done, it is just that it should fall on the one who caused the loss rather than upon the one who had no agency in producing it and could not by any means have avoided it."

It seems to us that the same feeling that prompted the passage in 1837 of the act in Massachusetts above referred to, and

three years later the more stringent act of 1840, so nearly contemporaneous to the adoption in this State of the amendment of the charter of the New York, Providence & Boston R. R. Co., existed in this State sufficiently strongly to account for the presence of section 2 in that amendment.

We are of the opinion that the words *owner or owners*, as used in section 2 of the amendment, refer not alone to those whose land is bisected by the railroad bed, but apply also to those whose land is sufficiently near to the roadbed to have their land damaged by fire communicated from the engines of the railroad company.

Although in the declaration the plaintiff is not designated as *owner* of the land burned over, using that very word, yet the allegation in the declaration that he was seized and possessed and the occupant of, etc., and the land being designated as the premises of the plaintiff, constitute a sufficient averment of ownership to require the plaintiff to prove at the trial his ownership of the land burnt over, as a necessary condition of recovery, and hence that the averment of ownership is sufficiently well laid.

(2)    The defendant claims that the legislation set forth in the declaration subsequent to the adoption of the amendment of 1836 of the charter of the New York, Providence & Boston R. R. Co. repealed section 2 of that amendment. That contention, if well founded, would be fatal to this action.

We have already decided that section 2 of the amendment of 1836 imposed charter duties and liabilities upon the New York, Providence & Boston R. R. Co. The defendant corporation—or rather the corporation or corporations existing under the laws of Connecticut and Massachusetts, respectively, under the name of the New York, New Haven & Hartford R. R. Co.—and the New York, Providence & Boston R. R. Co. in this State, desired to unite or consolidate so as to control under one management a through route from New York to Boston. To carry out this purpose the New York, Providence & Boston R. R. Co. was authorized and empowered to make a lease to the New York, New Haven & Hartford R. R. Co. of its railroad property and franchises for a term not ex-

ceeding 99 years, and said last-mentioned railroad company was authorized and empowered to accept such lease, but the lessee was to succeed to all the rights, privileges, and powers theretofore granted and belonging to the lessor, and be subject to the duties and liabilities imposed upon the same by its charter and the amendments thereto and the general laws of this State. At the January session 1893, our General Assembly passed an act whereby the stockholders of the New York, New Haven & Hartford R. R. Co., a corporation under the laws of the State of Connecticut and of the Commonwealth of Massachusetts were made a corporation under that name in this State, with the powers, privileges and franchises given to that corporation by its charter so far as the same were not inconsistent with the laws of this State, and so far as its road should be situated in this State, should have, exercise and enjoy all the rights, privileges and powers, and be subject to all the obligations, duties and liabilities, given to and imposed upon railroad corporations by the general laws of this State. Although the general laws of this State had no such provision in regard to fires set by locomotive as the public laws of both Connecticut and Massachusetts have, yet section 5 of the defendant's charter provided how it should proceed if for the purpose of the construction of one or more additional tracks adjacent to other land occupied by it by a track or tracks, said corporation desired additional land, and should be unable to obtain the same by agreement with the owner, and concluded in this wise—"and like proceedings shall thereupon be had in regard to the condemnation of and compensation for said land so taken as are provided for taking land by the charter of the New York, Providence & Boston R. R. Co. and the acts in amendment of and in addition thereto."

It will be observed that the Rhode Island charter of the defendant corporation conferred upon it, *in terms,* not only the powers, privileges and franchises given to that corporation by its charter (*i. e.* the charter granted by Connecticut and Massachusetts) so far as the same were not inconsistent with the laws of this State, but also all the rights, privileges and powers given by the general laws of this State, but that,

*in terms*, it only imposed upon it the obligations, duties and liabilities imposed upon railroad corporations by the general laws of this State, with no reference to the obligations, duties and liabilities imposed by the charter of the New York, Providence & Boston R. R. Co.

The defendant's charter granted by Connecticut and Massachusetts included the amendment passed by the legislature of Connecticut, June 14, 1889 (Special Acts of Conn. 1885–89, p. 1298), and also by the legislature of Massachusetts, as set out in the declaration, which amendment provided how it could retire the stock of any leased line by purchase or exchange and thereupon the stock, and all the franchises should be and be deemed to be forever transferred to and merged in the stock and franchises of the said New York, New Haven & Hartford R. R. Co.,   .   .   .   and the duties, obligations and privileges of said leased lines, as given and expressed by their respective charters, should be and remain upon and with the said New York, New Haven & Hartford R. R. Co.

Though the Rhode Island charter of the defendant corporation did not in express terms provide that the duties and obligations of the New York, Providence & Boston R. R. should devolve upon the defendant corporation, yet the pending legislation in this State as to the lease looking to the merging and consolidation of the two railroad companies, and the provisions in the amendment of June 14, 1889, of the Connecticut and Massachusetts charters, all indicate that what was intended in the Rhode Island charter was to allow and forward the consolidation of the two railroad companies but with the same duties, obligations and privileges as to the Rhode Island portion of it as had existed before.

The amendment of 1836 of the charter of the New York, Providence & Boston R. R. Co. was one relating to the condemnation of land, and that was passed in consideration of, in part, or at least, in connection with said section 2, thereof, and said section 5 of the Rhode Island charter of this defendant corporation showed that the charter of the New York, Providence & Boston R. R. Co., and the amendments thereto,

were in some measure at least interwoven with the duties and obligations of this defendant, so without some clearer intimation of the intent of the General Assembly to deprive citizens of this State of rights enjoyed by them under section 2 of the amendment of 1836 for nearly sixty years, than that relied on, we do not believe that our General Assembly intended to repeal said section 2.

In our opinion section 2 of the amendment of 1836 of the charter of the New York, Providence & Boston R. R. Co. has not been repealed, but is an existing duty and obligation transferred to and binding upon this defendant corporation.

As before intimated, the liability under said section 2 of the amendment of 1836 is not dependent upon the fire complained of having been communicated by negligence on the defendant's part, and hence no allegation of negligence in the declaration is necessary.

(3)  Inasmuch as said section 2 of the amendment of 1836 provides that the action brought to recover the damages complained of, shall be in debt, we fail to see any cause for demurrer because the action is so brought. While that form of action may not be so well adapted to the purpose as some others, we see no inherent difficulty in applying it, and it devolved upon the General Assembly to determine that. It is clear that a State may at any time alter the laws regulating procedure, and provide new remedies for the attainment of justice, although they may be applicable to corporations already in existence. Moravetz on Corp. § 1076, and cases cited.

For the reasons given we are of the opinion that the demurrer to the declaration should not be sustained.

Demurrer overruled and case remanded to the Common Pleas Division for further proceedings.

*James C. Collins, Jr.,* for plaintiff.

*Edward G. Buckland and John W. Sweeney,* for defendant.